OTTO, INC.

v.

COTTON SALVAGE & SALES, INC.
et al.

No. 1756.

Court of Civil Appeals of Texas,
Corpus Christi.

Nov. 13, 1980.

Rehearing Denied Dec. 11, 1980.

W. S. Fly and Frank S. Buhler, III, Fly & Moeller, Victoria, for appellant.

Myrtle McDonald and J. R. Blumrosen, Blumrosen & McDonald, Lubbock, for appellees.

## OPINION

BISSETT, Justice.

This is a venue case. Otto, Inc., plaintiff in the trial court, has duly and timely appealed from an order of the District Court of Lavaca County, Texas, which sustained the pleas of privilege filed by Cotton Salvage and Sales, Inc., and W. G. Ripley, defendants in the court below, to be sued in Lubbock County, Texas, where they were domiciled. Plaintiff controverted the pleas of privilege and asserted that venue was properly maintainable in Lavaca County, Texas, under the provisions of Tex.Bus. & Comm.Code Ann., § 17.41 et seq. (Supp. 1980), the "Deceptive Trade Practices–Consumer Protection Act," hereinafter referred to as the "DTPA," and under Tex.Rev.Civ. Stat.Ann. Art. 1995, Subdivisions 7, 23, and 29a (1964).

Plaintiff sued to recover damages for fraud under the common law rules of equitable jurisprudence; or, in the alternative, to recover damages for false and deceptive acts within the meaning of the DTPA. In summary, concerning the acts committed by the defendants upon which suit is based, plaintiffs alleged: 1) it had seven (7) contracts with a third party in Taiwan to furnish the latter with certain grades of raw cotton; 2) it entered into a contract with defendants, whereby defendants agreed to furnish the cotton to fulfill plaintiff's contracts with the third party; 3) defendants represented to plaintiffs that they did furnish cotton to the third party of the specified grade; 4) plaintiff, following such representations, paid defendants for the cotton; and 5) the representations, some of which were made in Lavaca County, where "portions" of the negotiations leading up to the making of the contract between plaintiff and defendants were conducted, were false and misleading. Relating to plaintiff's contention that defendant, by virtue of making false representations, committed a deceptive trade practice, it was specifically alleged:

### VI.

"In the alternative, and without waiving the foregoing, Plaintiff would show that Cotton Salvage and Ripley have violated the provisions of Sections 14.41, et seq., of the Business & Commerce Code of the State of Texas known as the Deceptive Trade Practices–Consumer Protection Act. Plaintiff alleges that these Defendants, and each of them, have committed deceptive trade practices described in Section 17.46, and specifically, but without limitation, Section 5 and 7 of such Act.

### VII.

In the alternative, and without waiving the foregoing, this Plaintiff is entitled to recover against Defendants, and each of them, under the provisions of Section 17.-50 of such Deceptive Trade Practices Act."

Plaintiff further alleged that it had been damaged by having "to make settlements for the poor quality of cotton furnished and which was different from the cotton that was agreed to be delivered," and that the defendants "have done business in Lavaca County." It sought a recovery of $171,-498.40 as damages and asked that such damages be trebled because of defendants' deceptive trade practices.

We first consider plaintiff's third and sixth points of error, wherein it complains that the trial court erred in not sustaining venue in Lavaca County under the provisions of Section 17.56 of the DTPA.

Plaintiff's original petition was filed on August 15, 1979. Therefore, the 1977 amendments of the DTPA control this case. Section 17.56 of the 1977 amendments of the DTPA provided:

"An action brought which alleges a claim to relief under Section 17.50 of this subchapter may be commenced in the county in which the person against whom the suit is brought resides, has his principal place of business, or has done business."

Other applicable provisions of the 1977 amendments of the DTPA read:

"Section 17.45 Definitions as used in this subchapter:

(1) 'Goods' means tangible chattels or real property purchased or leased for use.

(2) 'Services' means work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods.

\*   \*   \*   \*   \*   \*

(4) 'Consumer' means an individual, partnership, corporation, or governmental entity who seeks or acquires by purchase or lease, any goods or services."

\*   \*   \*   \*   \*   \*

"Section 17.50 Relief for consumers

(a) A consumer may maintain an action if he has been adversely affected by any of the following:

(1) The use or employment by any person of an act or practice declared to be unlawful by Section 17.46 of this subchapter;

(2) breach of an express or implied warranty;

(3) any unconscionable action or course of action by any person."

\*   \*   \*   \*   \*   \*

To establish venue in Lavaca County under Section 17.56 of the DTPA as the same existed under the 1977 amendments, plaintiff had to initially allege facts sufficient to show that it was a "consumer" of "goods" or "services" within the definitions set out in Section 17.45, and that it had a claim to relief under the Act. *United Plastics Co. v. Dyes*, 588 S.W.2d 857 (Tex.Civ.App.–Tyler 1979, no writ); *Compu–Center, Inc. v. Compubill, Inc.*, 580 S.W.2d 88 (Tex.Civ.App.–Houston [1st Dist.] 1979, no writ). See also, *Delaney Realty, Inc. v. Ozuna*, 593 S.W.2d 797 (Tex.Civ.App.–El Paso 1980, writ ref'd n. r. e.). Plaintiff's allegations show that it was either a purchaser of cotton, as "goods," from defendants "for use" by it; a purchaser of the "services" of the defendants in supplying the cotton required in plaintiff's contracts with the third party in Taiwan; or a purchaser of both "goods" and "services" from defendants.

Our first determination will be whether plaintiff purchased the cotton as goods "for use" within the meaning of Section 17.45(1) of the DTPA. In doing so, we are guided by several rules of statutory construction. First, since the Legislature did not specifically define "use," the ordinary meaning of the word will apply. *Satterfield v. Satterfield*, 448 S.W.2d 456, 459 (Tex.1969); Code of Construction Act, Tex. Rev.Civ.Stat.Ann. Art. 5429b–2, § 2.01 (Supp.1980). Second, we must consider the principles applicable in construing the DTPA. As set out in *Pennington v. Singleton*, 606 S.W.2d 682 (Tex.1980), those principles are:

"... The primary emphasis is on the intention of the legislature, keeping in view 'the old law, the evil and the remedy.' Legislative intent should be determined from the language of the entire Act and not isolated portions. The court is not necessarily confined to the literal meaning of the words used, and the legislative intent rather than the strict letter of the Act will control. The Act itself provides in § 17.44 that it 'shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection.' "

The words "for use" were defined in *Beggs v. Texas Dep't. of Mental Health & Mental Ret.*, 496 S.W.2d 252, 254 (Tex.Civ. App.–San Antonio 1973, writ ref'd) as follows: "to put or bring into action or service; to employ for or apply to a given purpose." In *James Stewart & Co. v. Mobley*, 282 S.W.2d 290, 294 (Tex.Civ.App.–Dallas 1955, writ ref'd), the court said: "Use" is to employ for accomplishment of a purpose; to apply to one's service; to avail oneself of." Webster's Seventh New Collegiate Dictionary (1963) says that "use" of a thing is "a method or manner of employing or applying something; the legal enjoyment of property that consists in its employment, occupation, exercise, or practice."

None of the above definitions would exclude from "use" one who purchases goods for resale. The purchaser merely converts the goods to his own purpose and enjoys a benefit, primarily financial, from their purchase. The goods, when they are bought for resale, are employed for a definite purpose, that is a resale for profit. We find no clear distinction among these definitions that would prevent plaintiff from qualifying as one who purchases cotton "for use."

Since its enactment in 1973, the DTPA has been amended in every subsequent legislative session. Many of these amendments have been enacted to broaden the scope of the DTPA, and to make its remedies available to consumers who were not able to sue under the original statute. This broadening of the scope of the DTPA is particularly apparent in the definition provision, Section 17.45. Partnerships, corporations and governmental entities have been added to the initial definition of "consumer" in subsection (4). In contrast, the original version of the DTPA only allowed "individuals" to sue under the statute. The definition of "merchant" as a "party to a consumer transaction other than a consumer" was deleted by the 1977 amendments. Also, real property and lease transactions were included in the "goods" definition by the 1975 amendments. And, in 1977, the definition of "services" was changed by deleting "for other than commercial or business use" to bring it in harmony with the "goods" definition of subsection (1).

After considering Section 17.45 as a whole, the amendments that the Legislature has enacted and the legislative history of the DTPA,[1] we feel that the clear intention of the legislature has been to expand the DTPA into a commercial setting. Some of our fellow courts, however, have been understandably reluctant to extend the scope of the DTPA to retailers or to persons who purchase the goods for the sole purpose of resale.

In *Person v. Latham*, 582 S.W.2d 246 (Tex.Civ.App.–Beaumont 1979, writ ref'd n. r. e.), a case which was filed prior to the effective date of the 1977 amendments to the DTPA, a purchaser of real estate who intended a resale to a "Mrs. Gigglia," was held not to be a "consumer" under the DTPA when he sued the real estate seller to recover damages for misrepresentations. The seller had evidently represented to the purchaser that "Mrs. Gigglia" would pay a large amount of money for a piece of lakefront property which the buyer could purchase at a lesser amount. Hoping to turn a quick profit, Person, the plaintiff, bought the lakefront property only to find out there was no such person as "Mrs. Gigglia." When plaintiff attempted to recover treble damages against the seller of the land involved, the Court stated that it was unwilling to liberally construe the DTPA to allow one who bought land for the sole purpose of defrauding a third party to recover as a "consumer." The Court said that the purchaser (Person) "did not purchase such lots for use, but to become a link in a chain designed to fleece the mythical Mrs. Gigglia of her funds," and that it "declined to permit one conspirator to recover treble damages against his coconspirator in a scheme to defraud a third person." For those reasons, the purchaser was denied a recovery of treble damages under the DTPA. There is no suggestion of any conspiracy to defraud a third party in the case at bar.

In *Ratcliff v. Trenholm*, 596 S.W.2d 645 (Tex.Civ.App.–Tyler 1980, writ ref'd n. r. e.) and *Trial v. McCoy*, 553 S.W.2d 199 (Tex. Civ.App.–El Paso 1977, no writ), the Courts

---

1. "In 1975, a proposed amendment to Section 17.45(1) of the DTPA was submitted to the Human Resources Committee in the following form: 'Goods' means tangible chattels and real property purchased or leased for *final* use." (emphasis supplied). The word 'final' was deleted from the definition following testimony by a representative of the Texas Automobile Dealers Association. The representative testified that the inclusion of the word 'final' would prevent automobile dealers from suing companies or individuals who sell products to dealers which products are, in turn, intended to be sold to dealers' customers. After this testimony, the word 'final' was deleted, and the bill was reported favorably to the Senate where it was enacted as the 1975 amendment to Section 17.-45(1) of the DTPA. Discussion on S.B. 48, Before Human Resources Comm., 64th Leg., 19–20 (Feb. 3, 1975).

specifically held that one who purchased for resale was not a "consumer" within the DTPA. Both cases, however, were decided under the 1975 amendments, when the DTPA still defined a "merchant" as "a party to a consumer transaction other than a consumer." The deletion of this definition in the 1977 amendments, showing a legislative intent to include merchants as consumers under the DTPA, would distinguish these two cases from the one at bar.

Neither *Person v. Latham, Ratcliff v. Trenholm,* nor *Trial v. McCoy,* supra, involved venue. None of these cases are in point.

Two recent cases have drawn a distinction between use of "goods" and use of "services." In *Baldwin v. Calcasieu Lumber Co.,* 588 S.W.2d 659 (Tex.Civ.App.–Austin 1979, no writ), a builder purchased certain fabricated trusses from a lumber company for use in homes which he intended to resell. The truss system was found by the trial court to be both a "good" and a "service", which was purchased by the builder. The Court of Civil Appeals, in the *Baldwin* case, found this distinction important, since the builder qualified as a consumer of the "goods" but not as a consumer of the "services." This odd result noted by the Court, was the result of the qualification in the "services" definition that they must be for "other than commercial or business use." Since no such qualification was made in the "goods" definition, a very real but illogical difference existed. The Court then held that since the builder had failed to distinguish between "goods" and "services," he had failed in his burden of proof, and could not be allowed to recover under the DTPA. This reasoning was followed under substantially the same facts in *Greene v. Bearden Enterprises, Inc.,* 598 S.W.2d 649 (Tex.Civ. App.–Fort Worth 1980, no writ). Both the *Baldwin* and the *Greene* cases were decided under the 1975 amendments of the DTPA.

Since the 1977 amendments of the DTPA deleted the phrase "for other than commercial or business use," there is no longer an "illogical difference" between "goods" and "services," as was the case in *Baldwin,* where the 1975 amendments applied.

In *Woods v. Littleton,* 554 S.W.2d 662 (Tex.1977), the issue addressed was whether plaintiffs were "consumers" of "services" within the meaning proscribed by the DTPA. Plaintiffs had purchased a home by a contract which included a promise to repair any defects that arose within the first year. The Court held that plaintiffs had not only purchased the home "but also, and in addition, the services of the builders as that term 'services' is used in the statute." The Court therein wrote:

"Webster's Third New International Dictionary gives a general definition of 'service' as 'action or use that furthers some end or purpose; conduct or performance that assists or benefits someone or something; deeds useful or instrumental toward some object.'" (Quoting *Van Zandt v. Fort Worth Press,* 359 S.W.2d 893, 895 (Tex.1962)."

*Id.* at 667.

We see nothing in the above definition that would prohibit plaintiff in the case at bar from being a "consumer" of "services." Plaintiff requested that Cotton Salvage & Sales go out and procure enough cotton to fulfill pre–existing contracts with a third person in Taiwan. This use was to further the end of complying with the contracts already entered into by plaintiff.

A broad and liberal construction of plaintiff's petition will justify a holding that the allegations contained therein are sufficient to allege that plaintiff is a "consumer" within the definition of Section 17.45. The pleadings allege that plaintiff either purchased the cotton from defendants "for use," within the meaning of subsection (1) of Section 17.45, or plaintiff purchased the "services" of defendant in fulfilling its contract with the third party in Taiwan, within the meaning of subsection (2) thereof.

We now determine whether plaintiff has alleged a "claim for relief" under Section 17.50 of the DTPA. It was alleged that Ripley and Cotton Salvage & Sales represented to plaintiff that the cotton

shipped to plaintiff's customer in Taiwan was a good grade of certain specified cotton types. It was further alleged that these statements were false and that plaintiff was adversely affected thereby. Violations of the DTPA were specifically pleaded and damages were sought for such violations. We hold that plaintiff did allege a claim for relief under Section 17.50 of the DTPA. *Dairyland County Mut. Ins. Co. of Texas v. Harrison*, 578 S.W.2d 186 (Tex.Civ.App.–Houston [14th Dist.] 1979, no writ); *Compu–Center, Inc. v. Compubill, Inc.*, supra.

Section 17.56 of the DTPA also requires plaintiff to prove that defendants had done business in Lavaca County to sustain venue. *Frost v. Molina*, 595 S.W.2d 184 (Tex.Civ.App.–Corpus Christi 1980, writ ref'd w. o. j.); *Compu–Center, Inc. v. Compubill, Inc.*, supra. To have done business, the contact need only be the one transaction that is the basis of the lawsuit. *Legal Security Life Ins. Co. v. Trevino*, 23 Tx.Sup. Ct.J. 577 (Per Curiam, June 30, 1980).

In the venue hearing, testimony was introduced, without objection, that Ripley went to Hallettsville, Lavaca County, Texas, as a representative for Cotton Salvage & Sales, and met with Otto Goedecke, a representative for plaintiff, concerning the cotton shipments; certain terms of the contract were discussed at that meeting. Also, two invoices made by Cotton Salvage & Sales to plaintiff, which showed that some of the cotton in question was sold to plaintiff and that the destination of the cotton was to plaintiff in Lavaca County, were introduced into evidence. There is ample evidence which establishes the fact that defendants have done business in Lavaca County.

Since we find that plaintiff has alleged a claim for relief under Section 17.56 of the DTPA and has proved that defendants have done business in Lavaca County, we find venue is properly sustainable in Lavaca County. Plaintiff's third and sixth points of error are sustained.

In view of our disposition of plaintiff's third and sixth points of error, it becomes unnecessary for us to consider its remaining points.

The judgment of the trial court is REVERSED, and judgment is here RENDERED that defendants' pleas of privilege be and the same are overruled.

REVERSED AND RENDERED.