Dwayne HAMILTON and Myrlene
Dillon, Appellants,

v.

TEXAS OIL & GAS CORP., Appellee.

No. 7037.

Court of Appeals of Texas,
El Paso.

Aug. 18, 1982.

Appellants' and Appellee's
Rehearing Denied Sept. 15, 1982.

Carrington, Coleman, Sloman & Blumenthal, Robert H. Mow, Jr., Rod Phelan, Mark S. Werbner, Dallas, Legg & Baskin, Reagan H. Legg, Midland, for appellants.

Bullock, Scott & Neisig, Tom Scott, Russell W. Neisig, Dale Strauss, Midland, for appellee.

## OPINION

WARD, Justice.

This is a suit between the operator, Texas Oil and Gas Corp. (TXO), and two non-operator working interest owners of an oil and gas well. The action began as a suit by the operator on a sworn account against the two non-operating working interest owners (Appellants) to collect Appellants' share of the drilling costs. Appellants (defendants below) denied the account and countersued for damages and equitable relief alleging: material breaches by the operator (Appellee) of the Joint Operating Agreement (J.O.A.); a breach of the operator's alleged fiduciary duty; gross negligence in the operation of the B–3 well; and deceptive trade practices. We affirm the judgment of the trial court.

Since the parties on appeal refer to Appellants as Appellant, in that Dwayne Hamilton was at all times acting for himself as well as agent for Myrlene Dillon, we adopt hereafter the same reference. Appellant, as non-operator working interest owner, received from Appellee, as operator, notice of a proposed well pursuant to Section 12 of the J.O.A. Appellant executed appropriate Authorities for Expenditures (A.F.E.) for drilling of the B–3 well. The location of the new well as described in the A.F.E. was at coordinates 1250′ from the North lease line and 2080′ from the East lease line. This proposed site was indicated by a wooden stake which was incorrectly located. Later, with notice to the Texas Railroad Commission but without notice to Appellant and the other parties to the J.O.A., the site was moved to 1323′ from the North lease line and 2210′ from the East lease line. The distance between the original stake and the new drill site was calculated by Appellant to be 630′. Appellant, after trying unsuccessfully to discover from Appellee's agents the reasons for the change, notified Appellee that he would not bear any additional costs on the site. Appellee construed this notification as a non-consent election by Appellant as to completion costs under Section 31(a) of the J.O.A. Upon production from the B–3 well, Appellee began withholding the contractual risk percentages authorized by Sections 12 and 31(a) of the J.O.A. for completion costs. Appellant refused to pay for drilling costs, at which time Appellee brought the original action upon sworn account.

In response to special issues, the jury found most issues favorably to Appellant, finding that Appellee: had been guilty of gross negligence; had failed to perform its operator duties in a good and workmanlike manner; had pursued an unconscionable course of action against Appellant and committed other deceptive acts. The jury also found Appellant was a "consumer," found $5,000.00 actual damages, $10,000.00 exemplary damages as well as $50,000.00 attorney's fees in favor of Appellant and against Appellee; and found that Appellant had not waived any right to complain of the location of the well. The court thereafter disregarded the jury finding that Appellant was a "consumer" under the Deceptive Trade Practices Act (D.T.P.A.) and reduced Appellant's attorney's fees to $41,632.55. Appellant and Appellee both present points of error on this appeal.

Appellant complains of the court's action: in failing to award Appellant the $59,469.78 in penalties collected by Appellee from Appellant's share of the net revenues from the B–3 well; in disregarding the "consumer" finding and failing to treble damages; in reducing Appellant's attorney's fees; and, in refusing an accounting and mandatory injunction.

Appellee in cross points complains of the court's action: in failing to disregard the

jury's findings regarding waiver; in overruling Appellee's motion as it related to attorney's fees; in failing to disregard the jury's findings as to deceptive practices and unconscionable course of action; in failing to hold the evidence insufficient as to: gross negligence, failure to perform in a good and workmanlike manner, damages (both actual and exemplary), and as to deceptive and unconscionable acts.

Appellant's first point of error asserts the trial court erred in not returning to Appellant $59,469.78 in penalties which were withheld by Appellee from Appellant's share of the net revenue. The contractual risk percentages, referred to as penalties by Appellant, were assessed upon Appellant's non-consent to completion costs under Section 31(a) of the J.O.A. The parties are in agreement that Appellant chose to affirm the *drilling* cost election under Section 12 of the J.O.A. and sue for damages thereon. Upon a material breach of contractual obligation, Appellant could elect to either rescind the agreement or affirm it and seek damages. He could not do both. *Texana Oil Company v. Stephenson,* 521 S.W.2d 104 (Tex.Civ.App.—El Paso 1975, no writ). In this regard, the jury awarded Appellant $5,000.00 damages for Appellee's breach of the drilling agreement, the sum representing the difference in site preparation costs where drilled as compared with those costs at the staked location. The jury found no damages for alleged oil and gas lost to Appellant by virtue of drilling at the location drilled as compared with the one staked. The jury also found that Appellee was not entitled to recover additional drilling costs for the B–3 well.

█ The J.O.A. is clearly divisible as to the requisite election under Section 12 as to *drilling* costs and the second election under Section 31(a) as to the well *completion* costs. Divisibility of a contract depends on the intentions and acts of the parties. A frequently used test is whether or not the consideration for the agreement is apportionable. It is generally held that a contract is divisible where the part to be performed by one party consists of several distinct and separate items and the price to be paid by the other party is apportioned to each item. *Chapman v. Tyler Bank & Trust Company,* 396 S.W.2d 143 (Tex.Civ. App.—Tyler 1965, writ ref'd n.r.e.). The J.O.A. before us meets this test. The fact that Sections 12 and 31(a) of the J.O.A. are divisible as to B–3 well is determinative of this point of error.

█ The breach of Appellee came at the drilling stage of operations. Appellant sought and recovered damages for this breach. A separate and distinct election was called for at the completion stage of the J.O.A. (Section 31(a)). Appellant elected to go non-consent at this stage of operations. There is no alleged breach at the completion stage of Appellee's operations. Appellant seeks to rely on Appellee's breach of the J.O.A. at the drilling stage to negate the contractual risk percentages of the completion stage. Appellant argues that a party who has breached a contract cannot exact penalties due under the contract. This argument overlooks the divisibility of the J.O.A., and the fact that two separate elections are required of each party to the J.O.A., one at the drilling stage and one at the completion stage. At the time of the Section 31(a) election, Appellant was in possession of all material facts with which to make an informed decision whether to join in the completion attempt. Upon his non-consent to completion costs of the B–3 well, and production therefrom, the contractual risk percentages of Section 31(a) of the J.O.A. were properly assessed against Appellant.

█ Appellant next argues that a fiduciary relationship existed between the parties, that the relationship was breached by Appellee, and that damages for this breach should be the amount of penalties withheld by Appellee. Joint owners of an oil and gas lease, may contract for the operation of leases by one of them and for the operator, in the event of success, to pay to the other joint owners one-half of the proceeds of the sale of the oil and gas less the expenses of finding it, without creating a joint venture or a mining partnership. *Luling Oil & Gas*

*Co. v. Humble Oil & Refining Co.,* 144 Tex. 475, 191 S.W.2d 716 (Tex.1945). Appellant cites *Rankin v. Naftalis,* 557 S.W.2d 940 (Tex.1977), for the proposition that a fiduciary relationship existed as a matter of law. But *Rankin* would establish fiduciary duties only upon a finding of joint venture. In *Patton v. Callaway,* 522 S.W.2d 252 (Tex. Civ.App.—El Paso 1975, writ ref'd n.r.e.), it was held that the elements of a joint venture are (1) mutual right of control, (2) community of interest, (3) the sharing of profits as principals and (4) the sharing of losses, costs or expenses. The Supreme Court in *Ayco Development Corporation v. G.E.T. Service Co.,* 616 S.W.2d 184, 185 (Tex.1981), reiterated the elements necessary to establish a joint venture, including the mutual right of control or management of the enterprise. The proof there showed that the defendants were by contract wholly excluded from participation in the drilling, operating and control of the well in question. The defendants paid part of the cost of drilling and visited the well site. The court held, as a matter of law, that the parties were not joint venturers. Here, Appellee had full control of all operations; the parties were severally, not jointly, liable under Sections 5 and 22 of the J.O.A. Appellant's argument fails. Appellant's first point of error is overruled.

Appellant in the second point contends that the 400% penalty was unenforceable as a matter of law and that the trial court erred in allowing Appellee to rely on such an unenforceable penalty clause to deprive Appellant of net revenues. The clause complained of is at Section 12 of the J.O.A. This section provides that, upon production, any non-consenting party will receive no revenues until the consenting parties have received: (1) 100% of the non-consenting party's share of the cost of newly acquired surface equipment plus 100% of the non-consenting party's share of operating expenses, and (2) 400% of the non-consenting party's share of drilling costs. Section 31(a) of the J.O.A. provides for similar damages upon a working interest owner's non-consent to well completion costs.

■ In order to enforce a liquidated damage clause, the court must find: (1) that the harm caused by the breach is incapable or difficult of estimation, and (2) that the amount of liquidated damages called for is a reasonable forecast of just compensation. *Rio Grande Valley Sugar Growers, Inc. v. Campesi,* 592 S.W.2d 340 (Tex.1979). Where the intention of the parties is not clear, the language used, the subject matters dealt with, the situation of the parties, the object to be attained, and the surrounding circumstances must be looked to. *Grimsley v. Life Ins. Co. of Virginia,* 154 S.W.2d 196 (Tex.Civ.App.— Austin 1941, writ ref'd w.o.m.).

■ Such a liquidated damage clause is designed to compensate for the financial risks that consenting parties to the J.O.A. are subject to, considering the ultimate possibility that the well may be a nonproducer. At 2 Williams and Meyers, *Oil and Gas Law,* Section 504.1 (1981) it is stated:

"Where cooperation in a development plan or joinder in a lease of one or more concurrent owners cannot be obtained, the burden on the concurrent owner or his lessee who wishes to develop the land is obviously considerable. Not only must he carry the entire risk of unsuccessful exploration, while still being subject to the requirement of sharing in the benefits, but his burden is increased by uncertainty about the various costs which he may apply against the production from a successful well."

To declare these provisions void as a penalty would permit non-consenting parties to participate in the venture risk free. Testimony evidenced that such provisions between 200% and 500% are standard in the industry. In view of the substantial financial risks suffered by consenting parties and in view of the fact that the percentage is to be paid only from production, we believe the 400% provision of Section 12 of the J.O.A. is valid and enforceable. Appellant's second point of error is overruled.

■ Appellant's third point of error is that the trial court erred in disregarding

the jury finding that Appellant was a "consumer" within the meaning of Section 17.45(4) of the Texas Business and Commerce Code, otherwise known as the Deceptive Trade Practices Act, and in failing to award treble damages. A plaintiff bringing an action under the Act must prove that he is a consumer. *Delaney Realty, Inc. v. Ozuna,* 593 S.W.2d 797 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r.e.). Consumer is defined at Section 17.45(4) of the Act as "an individual, partnership, corporation, or governmental entity who seeks or acquires by purchase or lease, any goods or services." Purchase is defined as the "[t]ransmission of property from one person to another by voluntary act and agreement, founded on a valuable consideration." *Hall v. Bean,* 582 S.W.2d 263 (Tex.Civ.App.—Beaumont 1979, no writ). But the definition of purchase in *Bean* is inadequate in the context of services. Services is defined as "work, labor, or service purchased or leased for use." Tex. Bus. & Comm.Code Ann., Section 17.45(2) (Vernon Supp.1981). "For use" was defined in *Otto, Inc. v. Cotton Salvage & Sales, Inc.,* 609 S.W.2d 590, 593 (Tex.Civ.App.—Corpus Christi 1980, writ dism'd.), as follows: "to put or bring into action or service; to employ for or apply to a given purpose;" and "use" was defined as "to employ for accomplishment of a purpose; to apply to one's service; to avail oneself of." Appellant maintains that TXO rendered operator's services to Appellant and was paid therefor. These included directing and controlling all operations, paying costs, and providing management, bookkeeping and supervision. In actuality, TXO was simply reimbursed for costs incurred on behalf of the operating and non-operating interest owners. Appellant did not employ TXO. Rather, there was merely a consolidation of interests. TXO was the "front man" incurring the debts for all, for which it was entitled to be reimbursed. That TXO did not intend to make a profit for what it did is a factor to be weighed. Appellant would contend that pursuant to *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535 (Tex.1981), even if Appellant had not purchased services from TXO, he purchased from the suppliers of TXO. Although *Cameron* eliminated the privity requirement, and even assuming Appellant was a purchaser in this context, the suppliers did not provide the services which form the basis of the complaint and *Cameron* is not applicable. The purpose of operating agreements, being to spread the risk of drilling operations among several investors with the operator managing the books and making disbursements from a joint account for the benefit of all involved in the J.O.A., should not be construed, we believe, to create liabilities under the Act. We hold that under the facts of this case, Appellant, as a matter of law, was not a "consumer" of services as contemplated within the Act and that the trial court was not in error in disregarding the jury finding to the contrary. Point of Error No. Three is overruled.

■ Appellant's fourth and fifth points of error complain of the trial court's refusal to order that no amounts be withheld from Appellant's revenues from the B–3 well in the future and that Appellant be furnished with a monthly accounting of revenues from that well. Upon collection by Appellee of the risk percentages assessable for completion costs (as previously determined), Appellant is entitled to receipt of its full share of net revenues from the B–3 well.

Appellant argues that Appellee will continue to withhold sums claimed due for drilling expenses. This action would be in direct contravention of the jury verdict (Special Issue No. 1) and the judgment of the court below. Appellant owes no additional drilling costs.

Appellant complains that no order was entered mandating a monthly accounting of expenses and revenues in accordance with Section 12 of the J.O.A. Appellee replies that it has never denied that Appellant is entitled to the information. Compliance should be presumed without the necessity of a mandatory injunction. Appellant has an adequate avenue to seek redress, absent a voluntary compliance with the J.O.A., upon proper pleading and evidence. Appellant's fourth and fifth points are overruled.

■ Appellant's sixth and final point of error and Appellee's third and fourth cross points concern the amount of attorney's fees adjudged by the court below. The jury awarded Appellant $50,000.00 attorney's fees. The trial court reduced that amount to $41,632.55, and we believe correctly. Appellant's expert witness testified that an award of $41,632.55 would be reasonable and customary in the area for trial of this cause. Appellant was entitled to recover attorney's fees by statute (Article 2226, Tex.Rev.Civ.Stat.), upon successful prosecution of its counterclaim, based on a written contract. Where its defense of Appellee's suit on sworn account was, in effect, a negative rebuttal to its cause of action on the counterclaim, attorney's fees are recoverable for the defense of the original action also. *Duval County Ranch Company v. Alamo Lumber Company,* 597 S.W.2d 528 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.). Appellant argues in its reply point that *Bray v. Curtis,* 544 S.W.2d 816 (Tex. Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.), is controlling. This contention is erroneous for the reason cited by Justice Keith in the *Duval* case, *supra.* Evidence was received that Appellant's defense of the original action occupied only between 0 and 10% of the hours spent.

■ Appellee raises by cross point the contention that the award of attorney's fees was excessive because Appellant's amount of recovery does not justify such a large award. Several factors should be considered in this regard: the action was initiated by Appellee to collect unpaid drilling costs, the litigation was complex, and every special issue was answered favorably to Appellant (except the Strawn reserve issue). The minimal part of Appellant's claim which was unsuccessful is not a proper basis for holding the award of attorney's fees to be excessive as a matter of law. We believe the trial court acted correctly in regard to the attorney's fees and Appellant's sixth point and Appellee's third and fourth cross points are overruled.

■ Appellee's first and second cross points complain of the failure of the trial court and the jury to find that Appellant waived his right to complain of the location of the B–3 well. Appellee cites *Fain v. Texas-Hanover Oil Company,* 354 S.W.2d 949 (Tex.Civ.App.—Austin 1962, writ ref'd n.r.e.), and *Bluebonnet Oil & Gas Company v. Panuco Oil Leases, Inc.,* 323 S.W.2d 334 (Tex.Civ.App.—San Antonio 1959, writ ref'd n.r.e.), as authority for its position. These cases stand for the proposition that a change in location of a well or contractual notice of intent to drill may be waived through voluntary action of a party. The facts in the case before us clearly support the jury's finding of no waiver. Within a week after Appellant discovered the change in location, he began questioning agents of Appellee as to the reason for change. The agents at first denied that the site was moved, or claimed that if it was moved, the move was inconsequential. After discussing the move with various persons, and receiving no reasonable explanation, on May 24, 1978, Appellant notified Appellee that he did not consider himself "in the well." Waiver is defined as the intentional relinquishment of a known right or intentional conduct inconsistent with such claim. *Continental National Bank v. Sanders,* 581 S.W.2d 293 (Tex.Civ.App.—El Paso 1979, no writ). The evidence in this present record does not support Appellee's argument that Appellant waived his right to complain of the change in location of the B–3 well. Appellee's first and second cross points are overruled.

■ Appellee's sixth cross point asserts that there is insufficient evidence to support the jury's finding of gross negligence. Gross negligence is "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *McPhearson v. Sullivan,* 463 S.W.2d 174 (Tex.1971). Several connected acts of simple negligence may support a jury's finding of gross negligence. *McPhearson, supra.* Under the record, it would appear here that Appellee was consciously indifferent to the rights of Appel-

lant when it moved the original well site and failed to notify Appellant of the changed location. We believe there is sufficient evidence to support the jury's finding of gross negligence and the court's entry of judgment based thereon. Appellee's sixth cross point is overruled.

Appellee's seventh cross point complains of the jury finding to Special Issue No. 13. The jury found that Appellee did not perform material duties under the contract in a good and workmanlike manner. Appellee was under a duty under the J.O.A. to notify non-operator parties of the proposed drilling of a new well. Appellee failed to perform this duty. Upon the material change in location, no notice was accorded. This was a material breach of the J.O.A. and, we believe, supports the jury finding that duties under the J.O.A. were not performed by Appellee in a good and workmanlike manner. Cross point seven is overruled.

Appellee's eighth cross point is that there is insufficient evidence relating to Appellant's share of the difference in costs suffered due to the change in its location of the B–3 well. Under Section 5 of the J.O.A., no damages may be awarded absent a finding of gross negligence or breach of the provisions of the J.O.A. There is ample evidence in the record of site preparation costs. One expert testified that the costs of site preparation would increase four or five times due to the change in location. The jury's finding was within the scope of expert testimony. Appellee's eighth cross point is overruled.

Appellee's ninth cross point cites insufficient evidence to justify an award of exemplary damages. Punitive damages cannot be recovered in an action for breach of contract which is not accompanied by a tort, even though the breach is capricious and malicious. *William B. Roberts, Inc. v. McDrilling Company, Inc.,* 579 S.W.2d 335 (Tex.Civ.App.—Corpus Christi 1979, no writ). A finding of gross negligence will support an award of exemplary damages. *Southwestern Bell Telephone Company v.*

*Davis,* 582 S.W.2d 191 (Tex.Civ.App.—Waco 1979, no writ); *Southwestern Bell Telephone Company, Inc. v. Rucker,* 537 S.W.2d 326 (Tex.Civ.App.—El Paso 1976, writ ref'd n.r.e.). Appellee's action in changing the B–3 location, failing to notify other parties to the J.O.A., denying and equivocating that the B–3 location had been moved, all justified the jury's finding of gross negligence. In conjunction with such a finding, an award of exemplary damages was proper. Appellee's ninth cross point is overruled.

In light of our determination of Appellant's third point of error, we need not consider Appellee's fifth and tenth points.

The judgment of the trial court is affirmed.