**J. Woodford SALE, Appellant,**

v.

**Francis KENNEDY, Appellee.**

**No. 08–84–00015–CV.**

Court of Appeals of Texas,
El Paso.

Oct. 24, 1984.

Rehearing Denied Nov. 28, 1984.

John G. Hyde, Freeman & Hyde, Midland, for appellant.

Drew Mouton, Bancroft & Mouton, Big Spring, for appellee.

Before STEPHEN F. PRESLAR, C.J., and WARD and OSBORN, JJ.

## OPINION

OSBORN, Justice.

This is a deceptive trade practice case. The question presented on this appeal is whether an employee to whom a misrepresentation about coverage under a group health policy was made was the consumer where the employer alone purchased and paid for the policy. We hold that the employee was not a consumer under the terms of the Deceptive Trade Practice Act. Tex. Bus.& Com.Code Ann. sec. 17.46 et. seq. We reverse the judgment of the trial court and remand.

The Plaintiff Francis Kennedy was an employee of the Martin County Hospital District. In late 1978 or early 1979, the Board of Managers of the hospital district changed the group health insurance carrier for its employees from Blue Cross and Blue Shield to Southwest Medical Corporation Trust. The Defendant J. Woodford Sale was the insurance agent who obtained and sold the health insurance policy to the hospital district after the Board of Managers decided to change carriers. Sale met with the Board of Managers at a thirty minute presentation to explain the terms of the policy. The new policy contained two limitations or exclusions for preexisting conditions. There was a $4,000.00 limitation for a period of twelve months for preexisting conditions and apparently this was explained to the Board of Managers. The Board of Managers had the sole authority to decide who the district's health carrier for their employees would be and the employees had no input or influence on the decision made by the Board of Managers. All premiums for the policy were paid by the hospital district. The new policy was accepted and went into effect in February, 1979.

Shortly thereafter, the Defendant Sale met with the hospital district employees to explain the insurance benefits. At that meeting, Defendant also obtained from each employee a signed enrollment card with certain information from the employee. It was the Plaintiff's contention that at that meeting, Sale made the misrepresentation about the policy stating that every employee would be covered across the board without exception as to preexisting conditions. Plaintiff testified that he stayed after the meeting and again asked if

he would be covered for his preexisting conditions and that the Defendant assured him that he would be covered and that at no time was the $4,000.00 limitation for the first twelve months on preexisting conditions ever called to his attention. The Plaintiff testified that his wife was employed by Martin County and was covered under a group health insurance plan covered by Blue Cross and Blue Shield and he testified that had he known about the limitations under the district's new group plan, he would have enrolled on his wife's insurance and would have been fully covered for his preexisting condition.

Shortly after this meeting, the Plaintiff underwent surgery for a preexisting condition and subsequently needed two additional operations. He filed claims for the medical expenses from these operations, and it was only then he found out about the $4,000.00, twelve-month ceiling for preexisting conditions. Due to the exclusion, the insurance company paid only up to the $4,000.00 limit, leaving a balance of $11,-338.21 unpaid medical expenses for the Plaintiff's operations.

After the insurance company refused to pay the claim, the Plaintiff filed this suit against Sale, the insurance agent, and sought recovery under the Deceptive Trade Practice Consumer Protection Act and also on the basis of common law fraud. The case was tried to a jury which in answer to special issues submitted, determined (1) that the Defendant misrepresented to the Plaintiff that there would be no limitation of coverage on employees with preexisting conditions; (2) that the Defendant made such representation knowingly; (3) that $11,338.21 was the actual damages suffered by the Plaintiff as a result of the Defendant's misrepresentations made to him; and (4) that such misrepresentation by the Defendant was a producing cause of the Plaintiff's actual damages. By Special Issue No. Five, the jury failed to find that the Defendant misrepresented to the Board of Managers of the hospital district that there would be no limitation of coverage on the employees with preexisting conditions. Based on the jury's answers to the special issues, the trial court rendered judgment for Kennedy for treble damages totaling $34,014.63 and for the attorney's fees determined by the jury.

■■■ The Defendant brings forth only two points of error. In both points, the Defendant contends that the Plaintiff cannot recover under the Deceptive Trade Practice Act because he did not have standing as a consumer. The standard for determining whether one is a consumer is (1) the individual must have sought or acquired goods or services by purchase or lease and (2) the goods or services must form the basis of the complaint. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535 (Tex.1981). There is no doubt as to the sale of insurance being a service. *Dairyland County Mutual Insurance Company of Texas v. Harrison*, 578 S.W.2d 186 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ). First, it must be noted that Plaintiff did not *seek* or *acquire* this policy, the Board of Managers alone did that. Also, the Plaintiff did not purchase the service from the Defendant. The term "purchase" has been defined as transmission of property from one person to another by voluntary act and agreement, founded on a valuable consideration. *Hall v. Bean*, 582 S.W.2d 263 (Tex.Civ.App.—Beaumont 1979, no writ). This court recognized in *Hamilton v. Texas Oil & Gas Corp.*, 648 S.W.2d 316 (Tex.App.—El Paso 1982, no writ), that the *Hall* definition of purchase was inadequate in the context of a service. Service is defined in the Act as "work, labor, or service purchased or leased for use." Tex. Bus. & Com.Code Ann. sec. 17.45(2) (Vernon Supp.1984). The modification made in *Hamilton* went to an elaboration of the term "use" rather than a real modification of the term "purchase." Thus, even in the context of a service, for there to be a purchase there still must be a transmission of a service from one person to another by voluntary act and agreement founded on valuable consideration.

■■■ We do not have that situation here. There was no exchange of valuable

consideration between Defendant and Plaintiff. This case does not present the same factual pattern as in the *Cameron* case. The pattern differs in this case in that the employer is inserted between Defendant and Plaintiff. The employer was the purchaser of the service. The term "purchase" is to be defined within the context of its common and ordinary meaning. *Hall v. Bean, supra* at 265. In this case the employee had no say in which policy the employer purchased, the coverage to be provided or the amount of premiums to be paid. How can one purchase goods or services which he does not select or agree to the price thereof? *Cameron* abrogated the privity requirement for deceptive trade suits, but the Supreme Court did not abrogate the requirement that there be a "purchase" by the one claiming to be a consumer. *Cameron, supra* at 539.

The legislature was urged in the concurring opinion in *Delaney Realty, Inc. v. Ozuna,* 593 S.W.2d 797, 801 (Tex.Civ.App. —El Paso), writ ref'd n.r.e., 600 S.W.2d 780 (1980), to "again amend the Act to provide protection for a consumer where the one who provides the service has been paid therefor, even though the consumer did not purchase or pay for such service." In 1983, the legislature did amend the Act and specifically the definition of consumer in Section 17.45(4), but not as suggested in the *Ozuna* opinion, and it is not the function of the courts to write in such an amendment to the Act which has been urged upon the legislature and they have not seen fit to enact. Had the legislature felt that it was not necessary in order for one to be a consumer that he have "sought or acquired goods or services by purchase or lease," it would have made the necessary amendment to the Act after the *Cameron* decision. Points of Error Nos. One and Two are sustained.

■ We have concluded that this case was tried upon the wrong theory and the case should have been tried and submitted to the jury upon proof of common law fraud and not a violation of the Deceptive Trade Practice Act. In the interest of jus-

tice, the case is remanded for a new trial upon that theory of law. *Southampton Civic Club v. Couch,* 159 Tex. 464, 322 S.W.2d 516 (1958); *Cape Conroe Limited v. Specht,* 525 S.W.2d 215 (Tex.Civ.App.— Houston [14th Dist.] 1975, no writ).

The judgment of the trial court is reversed and the case is remanded for a new trial upon the theory of common law fraud.

WARD, Justice, dissenting.

I respectfully dissent. I believe that the majority has afforded the Act a strict construction. As stated by the Supreme Court in *Cameron v. Terrell & Garrett, Inc.,* the act was designed to protect consumers from any deceptive trade practice made in connection with the purchase or lease of any goods or services. To that end, we should give the Act, under the rule of liberal construction, its most comprehensive application possible without doing any violence to its terms. In the *Cameron* case, it was held that the purchasers of a house were entitled to bring a private lawsuit against the real estate agent for deceptive trade practice violations on the basis that they were consumers even though the house was not purchased from the real estate agent, and even though the sellers of the house made no representation to the purchasers. Any requirement for privity was dispensed with altogether by that holding. Here, the purchase of the group policy was made for the Plaintiff's benefit and as one of the fringe benefits under his contract of employment. One of the Defendant's duties in connection with the purchase of the policy was his presentation to the employees and his explanation of the terms, coverage and exclusions contained in the policy. I believe that this presentation was an integral part of the sale and that the Plaintiff qualified as a consumer. He was certainly damaged by a deceptive trade practice violation. Point of Error No. One should be overruled.

The second point of error also partially addresses the question of the Plaintiff's status as a consumer and that portion of the point should be overruled. In addition,

Sale complains that the special issue submitted failed to submit all of the fundamental elements of common law fraud. I would also overrule this portion of the point as the Defendant failed to preserve error by any objections to the charge. Rule 274, Tex.R.Civ.P. I would affirm the judgment of the trial court.