F I L E D
United States Court of Appeals
Tenth Circuit

JUL 2 2004

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

PALACE EXPLORATION
COMPANY,

      Plaintiff - Appellant,

v.

PETROLEUM DEVELOPMENT
COMPANY,

      Defendant - Appellee.

No. 03-5141

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 98-CV-890-H)

---

Fred M. Buxton of Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, Oklahoma, for Plaintiff-Appellant.

Randall G. Vaughan (John L. Randolph Jr. with him on the brief) of Pray, Walker, Jackman, Williamson & Marlar, Tulsa, Oklahoma, for Defendant-Appellee.

---

Before **MURPHY, McKAY,** and **TYMKOVICH,** Circuit Judges.

---

**McKAY**, Circuit Judge.

---

This appeal involves the interpretation of an agreement between Plaintiff-Appellant Palace Exploration Company ("Palace"), an oil and gas investor, and Defendant-Appellee Petroleum Development Company ("PDC"), a petroleum company, related to the drilling of a well in Oklahoma. Appellant agreed to invest in one of Appellee's drilling prospects. The maps originally sent to Appellant prior to the agreement contained an inaccuracy.[1] Appellee moved the location of the well approximately 1600 feet because of the inaccuracy but did not inform Appellant of the move.

Appellant initially brought this action in New York state court seeking recision of the exploration agreement and the joint operating agreement that established its partnership in the subject well with Appellee. The case was removed to federal court and transferred to the Northern District of Oklahoma. The district court refused to allow a claim for breach of contract for gross negligence. On appeal, we reversed and remanded. Palace Exploration Co. v. Petroleum Dev. Co., 316 F.3d 1110 (10th Cir. 2003).

On remand, the district court was ultimately left with the question of whether Appellant could prevail on a claim for breach of contract for gross negligence. Appellee filed for summary judgment. The district court granted the

---

[1] The "geological maps were inaccurate[] because they improperly spotted the producing zone . . . at the bottom of the hole rather than farther up the well bore to the south." Aplt. Br. at 5.

motion holding that there was no ambiguity in the written agreement and that the record did not support a finding of gross negligence. Appellant appeals this ruling. We review *de novo* the district court's grant of summary judgment applying the same legal standards as the district court. Steele v. Thiokol Corp., 241 F.3d 1248, 1252 (10th Cir. 2001). A grant of "[s]ummary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c)). In "applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Id. The relevant facts are set forth in detail in our previous opinion. See Palace Exploration, 316 F.3d at 1112-16.

Appellant first argues that the district court erred in deciding that the agreements were unambiguous. At issue are the exploration agreement ("EA") and the joint operating agreement ("JOA") which were prepared by PDC and executed by Palace. "The EA provided that the initial test well would be drilled 'in the NW/4 of Section 8, Township 3 North, Range 16 East, Pittsburg County' and the JOA provided that the well would be drilled 'in a legal location in the W/2 of Section 8-T3N-R16E, Pittsburg County.'" Id. at 1114 (quoting EA at 2,

JOA at 4); Aplt. App. at 122, 132-33. Neither agreement provided for a more precise drilling location. See id. The parties do not dispute that the EA and JOA, construed together, do not create an ambiguity. Rather, the EA described a slightly more specific location than that described in the JOA. Both the JOA and the EA descriptions encompass the original incorrect well location and the new well location.

In order to create an ambiguity in the agreements, Appellant relies on the authority for expenditure cost estimate ("AFE") provided by PDC and attached to the EA. The EA provides that "[t]he estimated drill and test costs for the initial test well are listed in the Authorization for Expenditure (AFE) attached as Exhibit 'B'" and further states that the AFE is "incorporated in and made a part hereof." Aplt. App. at 122, 124. Appellant argues that the AFE created an ambiguity as to the location of the well by supposedly indicating a more specific location within that described by the JOA and EA. The AFE indicates that the location of the well is the "SE Haileyville Prospect SEC. 8-T3N-R16E Pittsburg County, Oklahoma." Id. at 125. Appellant's argument is that the district court ignored the AFE's indication of a specific well location – "SE Haileyville Prospect." Appellant further argues that this specific location was an undefined term in the contract but it was defined by the incorrect maps sent by Appellee to Appellant prior to signing of the agreements.

-4-

Appellant's argument must fail. "The JOA [and EA are] contract[s] to be construed like any other agreement." Pitco Prod. Co. v. Chaparral Energy, Inc., 63 P.3d 541, 545 (Okla. 2003). "Whether a contract is ambiguous so as to require extrinsic evidence to clarify the doubt is a question of law for the courts." Lewis v. Sac and Fox Tribe of Okla. Hous. Auth., 896 P.2d 503, 514 (Okla. 1994). When "a contract is clear and free of ambiguity, the court is to interpret it as a matter of law." Id. "Where . . . a contract is complete in itself and, when viewed as a totality, is unambiguous, its language is the only legitimate evidence of what the parties intended." Id. The parties' "intention cannot be determined from the surrounding circumstances, but must be gathered from a four-corners' examination of the instrument." Id.

As noted above, the two binding contracts executed by the parties, the EA and the JOA, are unambiguous. The EA and the JOA provide a specific legal description for the well location which does not provide for a staked surface location or impose upon Appellee an obligation to advise the working interest owners of the specific site chosen. The new location was within the outer bounds of the legal description provided by the agreements.

Because the EA and JOA were unambiguous, it was unnecessary for the district court to consider extrinsic evidence such as the AFE and maps. The purpose of the AFE was to provide a cost estimate for the drilling of the well. It

did not purport to further define the well's location.  The undefined term "SE

Haileyville Prospect" does not change the legal description in the two binding

contracts.  We agree with the district court that "the contract provides for specific

legal descriptions, and in fact the well was drilled within the four corners of those

legal descriptions."  Aplt. App. at 249.

Appellant next argues that the district court erred in its application of the

exculpatory clause of the JOA.[2]  The exculpatory clause shields Appellee from

liability unless it acted with gross negligence or willful misconduct.  Specifically,

the JOA designated that PDC, as operator of the contract area, "shall conduct all

such operations in a good and workmanlike manner, but it shall have no liability

as Operator to the other parties for losses sustained or liabilities incurred, except

such as may result from gross negligence or willful misconduct."  Id. at 133.

Therefore, the district court correctly framed its inquiry under the gross

negligence or willful misconduct standard contemplated in the agreement.

Appellant argues that the district court erred in finding no disputed issues

of material fact with regard to the degree of Appellee's alleged negligence.  Gross

negligence is "[t]he intentional failure to perform a manifest duty in reckless

---

[2] In its brief, Appellant admits that "neither party disputed [at the district court level] that the exculpatory clause of the joint operating agreement set the standard for determining PDC's liability as operator for breach of duties not affirmatively set forth in the agreements."  Aplt. Reply Br. at 6.

disregard of the consequences or in callous indifference to the life, liberty or property of another [which] may result in such a gross want of care for the rights of others and the public that a finding of a willful, wanton, deliberate act is justified." Fox v. Oklahoma Mem'l Hosp., 774 P.2d 459, 461 (Okla. 1989); see also Okla. Stat. tit. 25, § 6.[3]

Thus, the sole question is whether a jury could find that Appellee's conduct constituted gross negligence or willful misconduct. We agree with the district court "that even when viewed in a light most favorable to [Appellant,] the record does not support a finding of gross negligence. Aplt. App. at 249.

Our holding that the parties' agreements are unambiguous in providing a specific legal description for the well location, which does not provide for a staked surface location or impose upon Appellee an obligation to advise the working interest owners of the specific site chosen, precludes a finding of gross negligence. The new well location was within the outer bounds of the legal description provided by the EA and the JOA. Additionally, we agree with the district court that "[t]here is no manifest duty set forth in these agreements that

---

[3] "Slight negligence consists in the want of great care and diligence; ordinary negligence in the want of ordinary care and diligence; and gross negligence in the want of slight care and diligence."

Okla. Stat. tit. 25, § 6.

makes it gross negligence for one not to inform [an investor] that the surface location of a well has been moved." Id. The contract provides for a specific legal location and the well was drilled within the four corners of that description.

The maps submitted to Appellant turned out to be inaccurate, and Appellee moved the location of the well 1600 feet in order to correct the inaccuracy and hit the agreed-upon target sand. It was perhaps negligent not to inform Appellant of the change. However, pursuant to the binding agreements in this case, it was not gross negligence.

Appellant's reliance on Hamilton v. Texas Oil & Gas Corp., 648 S.W.2d 316 (Tex. Civ. App. 1982), is misplaced. In Hamilton, the court sustained a jury verdict that the operator of a well was grossly negligent when it relocated a well without notice to the non-operators. 648 S.W.2d at 323-34. The parties' agreement had directed that the well be drilled at a specific staked location with detailed coordinates. Id. at 319. The operator incorrectly located the actual well site and then tried to hide his error. In our case, the new well location was within the legal description in the agreements. Additionally, Appellee intentionally moved the location of the well because it turned out that the maps had inaccurately reflected the target sand.

**AFFIRMED**.