**Juan Carlos RUBALCABA a/k/a Juan Carlos Ruvalcaba, Individually and d/b/a Empresas Ruvalcaba, S.A., and Empresas Ruvalcaba, S.A., Appellants,**

v.

**PACIFIC/ATLANTIC CROP EXCHANGE, INC., Michael Lawrence, and Tony Browning, from El Paso, Appellees.**

No. 08–95–00293–CV.

Court of Appeals of Texas, El Paso.

March 7, 1997.

Rehearing Overruled Sept. 10, 1997.

Richard B. Perrenot, Roy R. Brandys, Mayfield & Perrenot, P.C., El Paso, for Appellants.

Stephen G. Peters, Mara Asya Blatt, El Paso, for Appellees.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

## OPINION

BARAJAS, Chief Justice.

This is an appeal from a default judgment rendered by the trial court against Appellants, jointly and severally, for actual damages in the amount of $126,705, and exemplary damages in the amount of $600,000. The case comes before this Court on writ of error from a default judgment. We reverse and remand in part and reverse and render in part the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

Appellant, Juan Carlos Rubalcaba, acting individually and as an agent for Empresas Ruvalcaba, called Appellee Browning, an agricultural commodities broker, and advised him that he was interested in exporting a quantity of peanuts to Mexico. Browning contacted Appellee Lawrence, another agricultural commodities broker, and through Lawrence, located the quantity of peanuts Rubalcaba had requested. Rubalcaba and Browning agreed that a trailer-load of peanuts would be shipped from western Canada to El Paso, Texas, where Empresas Ruvalcaba would pay for them and pick them up for export to Mexico. The peanuts were ultimately delivered to El Paso for a total price of $15,873.12.

After the peanuts arrived in the United States, the parties learned that United States Agriculture Department regulations required that Chinese peanuts, such as these, be shipped from Canada to Mexico by sea, rather than over land, as was erroneously done in this case by the Canadian broker, Werner Phillips. This violation of agricultural regulations placed pressure on Lawrence and Browning to get the peanuts out of the United States. Rubalcaba agreed to pick up the peanuts and get them out of the United States immediately.

Browning and Lawrence also arranged for another five trailers for a total price of $61,726.59 to be shipped, by Shah Trading Company Ltd., from eastern Canada to the Mexican port of Veracruz where Ruvalcaba would take possession of them. The Veracruz shipments were to be purchased under a method known as "cash against documents," under which, upon payment, a buyer is given necessary documents which would allow him to obtain possession of the product. The total price for this second shipment of "Veracruz" peanuts was $58,500, of which Appellees paid $13,500 in advance directly to Shah Trading Company, Ltd.

Soon after the peanuts arrived in Veracruz, Appellants reported to Appellees that the peanuts were in danger of deteriorating in the tropical heat, and requested that Appellees release them. Appellants offered to pay $39,000 of the $45,000 owed on the peanuts "simultaneously" with Appellees' release of goods. Rubalcaba sent a facsimile to Lawrence which purported to be a receipt for a wire transfer in the amount of $39,000 payable to Appellee Pacific Atlantic in partial payment for the Veracruz peanuts, this was indicated on the receipt from Banamex. Lawrence then authorized the release of the peanuts to Rubalcaba and Empresas Ruvalcaba. The record in the instant case shows that the actual wire transfer never arrived in the Pacific Atlantic account, contrary to the receipt's designated beneficiary, Pacific Atlantic Group Exchange.

Rubalcaba took possession of the Veracruz peanuts and eventually claimed that the peanuts were defective and unmarketable. Browning traveled to Mexico City, where Rubalcaba had taken the peanuts and tested them. Browning concluded that the shipment of peanuts was not defective, although he did state that there were approximately 80 bags of peanuts that were molding. Rubalcaba nonetheless continued to assert that the Veracruz peanuts were defective and refused to pay for the peanuts from El Paso because the money he had paid as a deposit on the Veracruz peanuts ($39,000) should be applied to the El Paso order.

Browning and Lawrence made arrangements to sell the Veracruz peanuts that Rubalcaba had shipped to Mexico City. However, on their arrival, they discovered that Rubalcaba had sold most of the shipment. The record establishes that Rubalcaba possessed invoices for these peanuts and was thus able to take possession of them, and

had the right to sell them. Appellees sold what was left at a net return to Lawrence and Pacific Atlantic for the sum of $23,-975.03. Lawrence and Pacific Atlantic nonetheless were forced to make good their guarantees to their suppliers and therefore were required to pay the sum of $64,099.71 to the two suppliers for the goods acquired by Rubalcaba and Empresas Ruvalcaba.

## II. DISCUSSION

The Appellants attack the trial court's default judgment with eight points of error. The Appellants bring a direct attack from a default judgment before this Court under a writ of error.

### A. Jurisdiction of the Court by Writ of Error from a Default Judgment

■ A party bringing a writ of error constitutes a direct attack on a default judgment. *Sebastian v. Braeburn Valley Homeowner's Assoc.*, 872 S.W.2d 40, 41 (Tex. App.—Houston [1st Dist] 1994, no writ). In order to bring a writ of error to the court of appeals, a party must satisfy the following four essential elements:

(1) The writ must be brought within six months after the judgment is signed;

(2) by a party to the suit;

(3) who did not participate in the actual trial; and

(4) the error complained of must be apparent from the face of the record.

*DSC Finance Corp. v. Moffitt*, 815 S.W.2d 551 (Tex.1991); *Stubbs v. Stubbs*, 685 S.W.2d 643, 644 (Tex.1985); *Brown v. McLennan County Children's Protective Services*, 627 S.W.2d 390, 392 (Tex.1982).

■ Appellants' Point of Error Nos. One through Six deal with legal and factual sufficiency claims concerning both actual and exemplary damages. Legal and factual sufficiency of the evidence to support the judgment is an appropriate inquiry on writ of error. *See Comstock Silversmiths, Inc. v. Carey*, 894 S.W.2d 56, 57 (Tex.App.—San Antonio 1995, no writ); *Herbert v. Greater Gulf Coast Enterprises*, 915 S.W.2d 866, 870 (Tex.App.—Houston [1st Dist.] 1995, no writ). Where claims of legal or factual suffi-

ciency concern damages, in a default judgment, the appellant is entitled to review of the evidence produced. *Transport Concepts, Inc. v. Reeves*, 748 S.W.2d 302 (Tex.App.—Dallas 1988, no writ), *citing Rogers v. Rogers*, 561 S.W.2d 172, 173–74 (Tex.1978).

We hold that Appellants meet the essential requirements for bringing a writ of error following a default judgment, and consequently, this Court has jurisdiction to entertain this action.

### B. Fraud and Exemplary Damages

In Point of Error No. Eight, Appellants assert that the trial court erred in finding that Appellants committed fraud, thus entitling Appellees to exemplary damages because Appellees' actions were in substance for breach of contract and could not support recovery of exemplary damages. In Points of Error Nos. Four, Five and Six, Appellants claim the trial court erred in awarding exemplary damages to Appellees, Michael Lawrence, Pacific/Atlantic Crop Exchange, Inc., and Tony Browning in the total amount of $200,000 each because no evidence was offered in support of such damages. We agree.

■ We note at the outset that exemplary damages are not admitted by default. *Sunrizon Homes Inc. v. Fuller*, 747 S.W.2d 530, 534 (Tex.App.—San Antonio 1988, writ denied). In the instant case, the only tort Appellants are alleged to have committed is fraud, and absent the required proof to establish fraud, Appellees are left with only a claim for breach of contract. Exemplary damages cannot be recovered in an action for breach of contract. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986); *Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 745 (Tex.1986); *Hamilton v. Texas Oil & Gas Corp.*, 648 S.W.2d 316, 324 (Tex.App.—El Paso 1982, writ ref'd n.r.e.).

■ The elements of fraud are:

(1) A material misrepresentation,

(2) which was false, and

(3) which was either known to be false when made or was asserted without knowledge of its truth,

(4) which was intended to be acted upon,

(5) which was relied upon, and

(6) which caused injury.

*Sears, Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex.1994); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990); *State National Bank of El Paso v. Farah Mfg. Co.*, 678 S.W.2d 661, 668 (Tex. App.—El Paso 1984, writ dism'd agr.); *Warner Communications, Inc. v. Keller* 888 S.W.2d 586, 595 (Tex.App.—El Paso 1994, no writ).

In the Appellees' original petition filed below, they allege a cause of action for fraud and breach of contract. While Appellees are correct that a no-answer default judgment operates as an admission of all material facts alleged in the plaintiffs' petition, such is the case only in instances where facts have been properly pled. *UNL Inc. v. Oak Hills Photo Finishing, Inc. et al*, 733 S.W.2d 402, 407 (Tex.App.—San Antonio 1987, no writ), *citing Stoner v. Thompson*, 578 S.W.2d 679 (Tex.1979). In order to prevail on the actionable fraud cause of action, Appellees must satisfy all elements of the tort. *Allen v. Allen*, 751 S.W.2d 567, 574 (Tex.App.—Houston [14th Dist.] 1988, writ denied); *Stephanz v. Laird*, 846 S.W.2d 895, 903 (Tex.App.—Houston [1st Dist.] 1993, writ denied). Fraud is never presumed, and when it is alleged, the facts sustaining it must be clearly shown. *Stephanz*, 846 S.W.2d at 903.

In accordance with the above cases, all the elements of fraud and all facts constituting fraud must be properly pleaded to satisfy an allegation of fraud. As previously stated by this Court in *El Paso Development Co. v. Ravel*, in a common-law action based on fraud, all the elements of fraud must be alleged and proven, if a judgment in favor of plaintiff is to be supported. *El Paso Development Co. v. Ravel*, 339 S.W.2d 360, 367 (Tex.Civ.App.—El Paso 1960, writ ref'd n.r.e.). As said by the Texas Supreme Court, "Merely to characterize an act as fraudulent does not make it a good allegation of fraud.... No amount of mere denunciating of it as a fraud could make it so. The facts constituting the fraud must be alleged." *Baines v. Mensing*, 75 Tex. 200, 12 S.W. 984, 985 (Tex.1889). On appeal, Appellees have identified those material facts adduced at trial which purportedly establish fraud and which originated from allegations in their original petition as well as the deposition of Michael Lawrence which was introduced at trial. We address those factual allegations.

The first allegation is premised on the fact that Rubalcaba faxed a fraudulent receipt for a wire transfer to Lawrence in order to induce him to release the Veracruz peanuts. We find this to be a mere conclusory statement not satisfying the elements of fraud. The Appellees do not show, and did not prove at trial, that the alleged fraudulent facsimile was either known to be false when it was made or was asserted without knowledge of its truth. Although Appellees describe the receipt for the wire transfer as "fraudulent," we find no evidence of this in the record before this Court. The copy of the receipt, which is actually an order for payment is exactly what it purports to be. The designated beneficiary is Pacific Atlantic Group Exchange and the directed bank is Wells Fargo Bank National. There is no evidence from the record that this was fraudulently made or fraudulently sent. When Lawrence was questioned as to what happened to the wire transfer, he said that Rubalcaba had indicated to him that Rubalcaba's bank had inadvertently sent the money to an account in Houston. If true, Appellants have no control over the errors of Banamex, and he certainly has no direction when it comes to sending out wire transfers from Banamex. There is no evidence that the wire transfer is fraudulent as Appellees' claim. In addition, when Lawrence was questioned by his counsel as to the wire transfer, he answered, "I have no idea if it was ever sent." This response leaves open the possibility that the transfer very well could have been sent, although to the wrong bank, without the knowledge of Lawrence. We find these statements to be insufficient to establish the fact that Appellants faxed a fraudulent receipt for a wire transfer.

Appellees' second assertion of fraud is founded on Rubalcaba's statement that the receipt was evidence he had already trans-

ferred $39,000 into the Pacific/Atlantic account. According to Lawrence's deposition introduced at trial, Rubalcaba told him that he had made a deposit of $39,000 to Banamex with instructions to wire that amount to Pacific/Atlantic account at Wells Fargo Bank. We find no evidence of fraud insofar as this is exactly what the wire transfer order says. The record establishes that Rubalcaba even made it a point to call Lawrence after he sent the fax and Lawrence said, "Yes, I have it." There is no evidence to show this was fraudulent conduct on the part of Rubalcaba.

Appellees' third allegation of fraud concerns the releasing of the peanuts by Lawrence only after he received the fax and Rubalcaba's assurances that the funds had been wired and would not have released the peanuts otherwise. While the above does establish Lawrence's reliance on the fax and Rubalcaba's statements, it does not establish that the fax or Rubalcaba's assurances were fraudulent.

The fourth fact of fraud Appellees rely on is the statement by Lawrence in his deposition, introduced in its entirety at trial, that the money from the wire transfer was never transferred to the Pacific/Atlantic account. While it is apparent that the funds were not received as instructed in the payment order, it does not prove that the funds were not sent. Rubalcaba correctly made the payment order with Pacific/Atlantic as the beneficiary and designated bank as Wells Fargo. The mere fact that the funds did not credit the Pacific/Atlantic account does establish fraud. Rubalcaba stated to Lawrence that Banamex inadvertently sent the money to an account in Houston. Lawrence made a feeble attempt to locate the funds by asking their bank to trace it. Lawrence's bank told him that it would have to be traced through the main bank and the record is silent as to whether Lawrence made any further inquires. Lawrence's deposition also stated that he said, "I have no idea if it was ever sent." We find that the above fails to establish fraud as alleged.

The fifth fact of Appellants' "fraudulent" conduct is the act of Pacific/Atlantic releasing the goods upon receiving evidence that a wire transfer had been sent because it sometimes took up to two days for the money to actually arrive in Pacific/Atlantic's accounts. While this does establish the necessary element of reliance, it does not establish fraud insofar as the evidence establishes that Appellants were not in control of the time period that it takes for funds to be transferred from one bank to another.

The sixth allegation of fraud is founded on the claim that if Lawrence had not released the peanuts to Rubalcaba, they could have been returned to the supplier and there would have been no cost to anyone except Appellants. While the above certainly establishes that there likely was a expense to someone other than Appellants, it fails to establish any requisite element of fraud.

■ The seventh item Appellees' claim demonstrates fraud on the part of Appellants is that Rubalcaba claimed that the peanuts were defective and unmarketable, although tests proved they were not defective. Nevertheless, the record shows that Appellants continued to sell the peanuts without paying for them. We find this first statement not to be entirely accurate. Lawrence testified that the bulk of the peanuts were not defective, but he also testified that there might have been 80 bags with mold damage. Additionally, Browning testified that there were a few bags that were molding, but that the vast bulk of the product was in good condition. Given the above, Appellees have failed to show that Rubalcaba's "claim" was false, or that Appellees relied on anything "claimed" by Rubalcaba.

The second statement of Appellees that Appellants continued to sell the peanuts does not prove any element of fraud. Although Pacific/Atlantic's invoice for these peanuts specifies "cash against documents", Lawrence testified that the documents had been given to Rubalcaba. Since Appellants had the documents, he was able to take possession of the peanuts, and he had the right to sell them. In fact, Appellants told Lawrence that even though the peanuts were defective, he would look through the lot and see if there was anything he could keep. Given the above, Lawrence should not have been surprised when Appellants continued to sell the peanuts. Neither of Appellants two state-

ments establish fraud; moreover, even if Appellants did fail to pay for the peanuts, this failure may have established a cause of action for breach of contract, rather than fraud.

The final assertion advanced to establish Appellees' cause of action is the promise by Rubalcaba to pay for the El Paso peanuts within two days, although he apparently had no intention of paying for them. We disagree. The record shows that Rubalcaba told Lawrence he would wire the money to Appellees "right away" and Lawrence understood this to mean two days. Even if the interpretation that Lawrence understood was correct, we find no evidence of fraud. Failure to perform a future act is fraud only when there is no intent to perform the act at the time the representation is made. *Schindler v. Austwell Farmers Coop.*, 841 S.W.2d 853, 854 (Tex.1992); *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992); *Stanfield v. O'Boyle*, 462 S.W.2d 270, 272 (Tex.1971); *Figueroa v. West*, 902 S.W.2d 701, 707 (Tex.App.—El Paso 1995, no writ). The failure to perform a future act is alone no evidence of fraudulent intent. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex.1986); *Figueroa*, 902 S.W.2d at 707. Appellees, in their original petition below, do not allege the requisite intent on the part of Appellants to establish fraud, and further, Appellees failed to offer any evidence at trial proving Appellants intent at the time of making the statement. Moreover, Appellees have not alleged any reliance on Appellants' purported promise. Lawrence testified that the United States Department of Agriculture advised him to get the peanuts out of the country fast. When Lawrence told Rubalcaba of this, Rubalcaba offered to pick up the peanuts "right away" in order to help him with this ordeal. We find no fraud in the above statements made by Appellants.

In addition, Appellees have failed to establish fraud and have produced no evidence at trial to sustain such finding of fraud. Given the above, Appellees have failed in their attempt to establish fraud, and consequently, exemplary damages cannot be awarded. Exemplary damages cannot be recovered in an action for breach of contract. *Jim Walter Homes, Inc.*, 711 S.W.2d at 618; *Bellefonte*

*Underwriters Ins. Co.*, 704 S.W.2d at 745; *Hamilton*, 648 S.W.2d at 324. Accordingly, Points of Error Nos. Four, Five, Six, and Eight are sustained, and the trial court's decision awarding exemplary damages to Appellees is reversed and such claims are rendered in favor of Appellants.

## C. Damages for Mental Anguish, Loss of Business Reputation and Breach of Contract

In the instant case, the trial court awarded actual damages to each Appellee which consisted of the sum of actual contractual damages, mental anguish and loss of business reputation. As noted above, Appellees failed to properly plead their fraud claim nor did they introduce any evidence at trial to succeed on their fraud claim. Appellees were consequently left with their claim for breach of contract and damages resulting from such breach. Exemplary damages cannot be recovered in an action for breach of contract. *Jim Walter Homes, Inc.*, 711 S.W.2d at 618; *Bellefonte Underwriters Ins. Co.*, 704 S.W.2d at 745; *Hamilton*, 648 S.W.2d at 324.

The trial court awarded actual damages for mental anguish. As a general rule, mental anguish is not an element of damages that may be recovered in an action either for breach of contract or for a tort founded on a right growing out of a breach of contract. *Hallmark v. Hand*, 885 S.W.2d 471, 481 (Tex. App.—El Paso 1994, writ denied); *Bohatch v. Butler & Binion*, 905 S.W.2d 597, 606 (Tex.App.—Houston [14th Dist.] 1995, writ denied); *Comstock Silversmiths, Inc.*, 894 S.W.2d at 58; *Myrtle Springs Reverted Indep. Sch. Dist. v. Hogan*, 705 S.W.2d 707, 710 (Tex.App.—Texarkana 1985, writ ref'd n.r.e.), *cert. denied*, 480 U.S. 906, 107 S.Ct. 1350, 94 L.Ed.2d 520 (1987); *see Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 (Tex.1981); *Otten v. Snowden*, 550 S.W.2d 758, 759–60 (Tex.Civ.App.—San Antonio 1977, no writ); *Rogowicz v. Taylor and Gray, Inc.*, 498 S.W.2d 352 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.); *see City of Dallas v. Brown*, 150 S.W.2d 129, 131 (Tex.Civ.App.—Dallas 1941, writ dism'd); *White Sewing Mach. Co. v. Lindsay*, 14 S.W.2d 311 (Tex.Civ.App.—Galveston 1929, writ dism'd); *Dunn v. Wilker-*

*son,* 203 S.W. 59 (Tex.Civ.App.—San Antonio 1918, no writ).

 Finally, we note that the trial court awarded damages for loss of business reputation. Loss of business reputation is not an element of damages recoverable for breach of contract. *See Sterling Projects Inc. v. Fields,* 530 S.W.2d 602 (Tex.Civ.App.—Waco 1975, no writ); *Streetman v. Lasater,* 185 S.W. 930 (Tex.Civ.App.—El Paso 1916, no writ); *Nelson v. Data Terminal Systems, Inc.,* 762 S.W.2d 744, 748 (Tex.App.—San Antonio 1988, writ denied). Although Appellees may have suffered actual damages relating to the breach of contract, damages for loss of business reputation and mental anguish cannot be recovered; consequently, the actual damages awarded to Appellees must be modified to account only for damages caused by such breach of contract.

### D. Actual Damages

In Points of Error Nos. One, Two, and Three, Appellants state the trial court erred in rendering judgment in favor of Appellees Lawrence, Pacific/Atlantic Crop Exchange Inc., and Browning in the amounts of $48,-750, $36,898, and $41,057, respectively. In Point of Error No. Seven, Appellants state the trial court erred in rendering judgment in favor of Appellees, Lawrence and Pacific/Atlantic Crop Exchange Inc., against Appellants, jointly and severally, for actual damages in the sum of $48,750, for the reason that this amount was in excess of the damages specifically pleaded in the original petition.[1] Evidence was introduced at trial establishing actual damages; however, the testimony did not show, and the default judgment did not specifically itemize what damages were attributed to the breach of contract, fraud, mental anguish, and loss of business.[2] Because of the preceding analysis concerning the sufficiency of Appellees' claim

for fraud, this Court is unable to determine what amount of the actual damages the trial court awarded for either the fraud claim, and related loss of business reputation and mental anguish, or the breach of contract claim.

We agree with the Appellants that the trial court erred in failing to find the proper amount of actual damages. We reverse the portion of the trial court judgment which pertains to actual damages suffered by the Appellees and remand the case to the trial court for a determination of the amount of actual damages which are attributed to Appellees' breach of contract claim.

Appellants' Points of Error Nos. Four, Five, Six, and Eight are sustained. We reverse the judgment of the trial court and render that Appellees take nothing in that the Appellees have failed to prove their cause of action for fraud as well as the subsequent award of punitive damages. We sustain Appellants' Points of Error Nos. One, Two, Three, and Seven. We reverse the portion of the trial court's judgment pertaining to actual damages suffered by the Appellees and remand the case to the trial court for a determination of the amount of actual damages which are attributed to Appellees' breach of contract claim.

---

1. The amount of $39,961.61 was plead by Appellees in their original petition as the total actual damages suffered by Appellees Michael Lawrence and Pacific/Atlantic Crop Exchange, Inc.

2. The record shows the manner in which damages were awarded by the trial court. The trial court said, "All right. The court will find that there has been proven a breach of contract and in the alternative, there has also been proven a fraud on the part of the defendant in this case. The court will award actual damages as set out in the testimony and in the deposition and in regard to the fraud claim, the Court is also going to award the maximum amount of exemplary damages that can be awarded. If you will fill out the numbers and let me take a look at it, I will sign your judgment."