**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 98-40679

SAN JUANITA SANCHEZ; REYES H. SANCHEZ,
Individuals Heirs at Law, Statutory Beneficiaries, and
Legal Representatives of and on behalf of the
Estate of Reyes R. Sanchez, Deceased,

Plaintiffs - Appellants,

VERSUS

LIGGETT & MYERS, INCORPORATED; ET AL,

Defendants,

LIGGETT & MYERS, INCORPORATED; BROOKE GROUP, LIMITED;
LIGGETT GROUP, INCORPORATED; BROWN & WILLIAMSON TOBACCO
CORPORATION, Individually and as Successor by merger
to the American Tobacco Company; BRITISH AMERICAN TOBACCO
COMPANY, LIMITED; BATUS HOLDINGS, INCORPORATED; PHILIP
MORRIS, INCORPORATED; R. J. REYNOLDS TOBACCO COMPANY;
LORILLARD TOBACCO COMPANY; UNITED STATES TOBACCO COMPANY;
HILL & KNOWLTON, INCORPORATED; THE COUNCIL FOR TOBACCO
RESEARCH USA, INCORPORATED, Individually and as successor
to the Tobacco Industry Research Committee; THE TOBACCO
INSTITUTE, INCORPORATED; SHOOK, HARDY & BACON, P.C.,

Defendants - Appellees.

Appeal from the United States District Court
for the Southern District of Texas

August 25, 1999

Before EMILIO M. GARZA, DeMOSS, and PARKER, Circuit Judges.

DeMOSS, Circuit Judge:

Reyes R. Sanchez began smoking in or around 1957, at the age of ten. Over the course of his life he smoked several different brands of cigarettes. In 1995, Sanchez was diagnosed with throat cancer.

1

He died in 1996.  The plaintiffs in this case, referred to herein as "Sanchez Family," are Sanchez's estate, surviving spouse, and heirs or statutory beneficiaries at law.  The defendants, referred to herein as "Tobacco Companies," are cigarette manufacturers and companies engaged in various tobacco industry related activities.

The Sanchez Family brought this lawsuit in state court, invoking the law of Texas and alleging, among other things, intentional fraud and misrepresentation, breach of implied warranty, violation of the Texas Deceptive Trade Practices Act (DTPA), and conspiracy -- each charge relating to the Tobacco Companies' alleged knowledge and concealment of information about the health hazards of smoking cigarettes.  The case was removed to federal court on the basis of complete diversity among the parties, *see* 28 U.S.C. § 1332.  The Tobacco Companies sought judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), claiming that the Sanchez Family's claims are precluded by both Tex. Civ. Prac. & Rem. Code § 82.004 and the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331 et seq.  This motion was granted by the district court, which relied on this Court's unpublished affirmances of the district court's previous dismissals of similar claims on both federal preemption and state

statutory grounds.[1]  The Sanchez Family timely appeals.  We affirm on the grounds of the Texas statutory bar.

**I.**

The Federal Cigarette Labeling and Advertising Act provides:

**Preemption**

**(a) Additional statements**

No statement relating to smoking and health, other than the statement required by section 1333 of this title, shall be required on any cigarette package.

**(b) State regulations**

No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

15 U.S.C. § 1334.  Section 1334(b) prohibits states from imposing legal requirements pertaining to the advertising or promotion of cigarettes.  The application of this preemptive provision is only of concern if state law purports to provide a cause of action that is inconsistent with the federal labeling scheme.  We can pretermit an extended preemption analysis if we determine that the law of Texas, which we must apply in exercising our diversity jurisdiction, does

---

[1]  *See* **Hulsey v. American Brands, Inc.**, No. 97-40694 (5th Cir. Mar. 2, 1998), *aff'g* No. C-97-003, 1997 WL 271755 (S.D. Tex. Apr. 7, 1997), *cert. denied*, 119 S. Ct. 162 (1998); **Oglesby v. American Brands, Inc.**, No. 97-40695 (5th Cir. Mar. 2, 1998), *aff'g* No. C-97-005, 1997 WL 881214 (S.D. Tex. Apr. 7, 1997), *cert. denied*, 119 S. Ct. 161 (1998); **Whirley v. American Brands, Inc.**, No. 97-40695 (5th Cir. Mar. 2, 1998), *aff'g* No. C-97-009, 1997 WL 881215 (S.D. Tex. Apr. 7, 1997), *cert. denied*, 119 S. Ct. 162 (1998).

not purport to provide any right or remedy on the grounds alleged by the Sanchez Family.  We therefore proceed directly to an analysis of the prohibition Texas has imposed on these claims.

## II.

The Tobacco Companies stand on solid state-law ground for opposing this lawsuit.  In 1993 the Texas legislature adopted the following statutory provision:

> In a products liability action, a manufacturer or seller shall not be liable if:
>
> (1) the product is inherently unsafe and the product is known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community; and
>
> (2) the product is a common consumer product intended for personal consumption, such as sugar, castor oil, alcohol, tobacco, and butter, as identified in Comment i to Section 402A of the Restatement (Second) of Torts.

Tex. Civ. Prac. & Rem. Code Ann. § 82.004(a) (Vernon 1997).  A key definition adopted at the same time states:

> "Products liability action" means any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, mis-representation, breach of express or implied warranty, or any other theory or combination of theories.

Tex. Civ. Prac. & Rem. Code Ann. § 82.001(2) (Vernon 1997).  These statutory provisions took effect on September 1, 1993 -- before

-4-

Sanchez was diagnosed with cancer on April 12, 1995, before he died on May 27, 1996, and before this lawsuit was filed on April 10, 1997.[2]

The Tobacco Companies contend they are not liable to the Sanchez Family because this is a "products liability action" in which the product (cigarettes) are unsafe and known to be unsafe by the community. The Sanchez Family argues that despite § 82.004, *American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420 (Tex. 1997), holds that, in order to avoid liability, the tobacco companies are required to prove a "common knowledge defense" to the Family's theory of failure to warn as to the addictive effect of tobacco use. But the *Grinnell* lawsuit was filed before September 1, 1993 (the effective date of § 82.004), and the Texas Supreme Court's decision was governed by common law, not by § 82.004(a).

Likewise, our dissenting colleague reads *Grinnell* as "a controlling statement of law which disposes of the precise issue presented by this case." We disagree. The precise issue in this case is the effect of § 82.004(a) on the claims of the Sanchez Family. In *Grinnell*, the only occasion for the Texas Supreme Court to mention § 82.004(a) was in footnote 2 of that opinion, wherein that court noted: (i) that § 82.004(a) was not applicable in

---

[2]     Act of Mar. 4, 1993, 73d Leg., R.S., ch. 5, § 3(a) provides:

> Sections 82.002 through 82.004, Civil Practice and Remedies Code, as added by this Act, apply only to a cause of action commenced on or after the effective date of this Act. A cause of action commenced before the effective date of this Act is governed by the law in effect at the time the action accrued, and that law is continued in effect for that purpose.

-5-

*Grinnell*; (ii) that § 82.004(a) was applicable to cases filed after September 1, 1993; and (iii) that § 82.004(a) was a legislative codification of comments (i) and (j) of § 402A of the <u>Restatement (Second) of Torts</u>. There is no holding of any kind by the Texas Supreme Court in this footnote 2.

The two holdings made by the Texas Supreme Court in *Grinnell* on the issue of "common knowledge" were:

> a. "We conclude that the general health dangers attributable to cigarettes were commonly known as a matter of law by the community when Grinnell began smoking," 91 S.W.2d at 429; and
>
> b. "We also hold that American did not establish as matter of law that the specific danger of addiction from smoking was knowledge common to the community," 951 S.W.2d at 431.

The Sanchez Family and our dissenting colleague now argue that the distinction found by the Texas Supreme Court in *Grinnell* between "common knowledge as to general health dangers" and "common knowledge as to the specific danger of addiction from smoking" should be the basis for determining that the Sanchez Family is not precluded by § 82.004(a) from seeking to recover for failure to warn of the addictive nature of cigarettes. We decline to make such distinction and determination. First, the plain, clear language of § 82.004(a) says nothing about such a distinction. Neither the words "addiction" nor the words "addictive effect" appear anywhere in § 82.004(a). Second, the legislative history of the adoption of § 82.004(a) clearly demonstrates that the Texas legislature declined to include the issue of addictive effect. While Senate Bill 4 (the legislative vehicle which ultimately became the Act) was pending on the floor of

-6-

the Texas House of Representatives, an amendment was offered to insert the following subsection in § 82.004:

> (b)  Because tobacco is an addictive substance and, especially in the case of a minor, may lead to a life long addiction, this section does not apply to a products liability action brought by a claimant for damages arising from the use of tobacco if the claimant began using tobacco before the earlier of:
>
> (1)  The claimant's 18th birthday; or
>
> (2)  The removal of the disabilities of minority by the claimant.

The House sponsor of Senate Bill 4 moved to table this amendment and the motion to table prevailed.[3]  In our view, the rejection of this amendment establishes the clear legislative intent that the only requirement of § 82.004(a) as to common knowledge is that the product be "known to be unsafe."  The Texas Supreme Court in *Grinnell* expressly held that this test was satisfied as a matter of law as to tobacco.  Likewise, our Court has previously noted that "the dangers of cigarette smoking have long been known to the community." *Allgood v. R.J. Reynolds Tobacco Co.*, 80 F.3d 163, 172 (5th Cir. 1996).  We hold therefore that the clear language of § 82.004(a) has been satisfied as a matter of law.

The Sanchez Family also argues that their complaint is not covered by the statute because it is not a "products liability" claim.  The Family contends its claims of fraud, conspiracy, and DTPA violation (Tex. Bus. & Com. Code Ann. §§ 17.46, 17.50 (Vernon Supp. 1999)) are not "products liability" claims.  That might be so in the traditional sense of "products liability" as a legal term of art,

---

[3]    See H.J. of Tex., 73d Leg., R.S. 457-58 (1993).

*see, e.g.*, *Black's Law Dictionary* 1209 (6th ed. 1990), but the definition in § 82.001(2) plainly forecloses this argument. As quoted earlier in this opinion, the term "products liability action" means "*any* action . . . arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, *or any other theory or combination of theories*." Tex. Civ. Proc. & Rem. Code Ann. § 82.001(2) (Vernon 1997). This action arises out of Mr. Sanchez's allegedly wrongful death and claims that are derivative thereof. All theories of recovery asserted by the Sanchez Family are covered, with the exceptions of manufacturing defect and breach of express warranty, *see* Tex. Civ. Prac. & Rem. Code Ann. § 82.004(b) (Vernon 1997), which are not alleged by the Sanchez Family. Finally, the Sanchez Family clearly alleged that Mr. Sanchez's death was caused by smoking cigarettes.

### III.

The Sanchez Family also points out that defendants other than manufacturers and sellers cannot claim protection under the statute. But the Sanchez Family cannot prove causation for any parties *but* the manufacturers and sellers of the cigarettes Mr. Sanchez smoked. A claim of intentional fraud and misrepresentation requires reliance on a misrepresentation of fact and proof of causation of injuries flowing from that reliance. *See, e.g.*, **Rubalcaba v. Pacific/Atlantic Crop Exchange, Inc.**, 952 S.W.2d 552, 555-56 (Tex. App.--El Paso 1997, no writ). The circumstances constituting fraud must be pleaded with

-8-

particularity. *See* Fed. R. Civ. P. 9(b). The complaint states merely that "Mr. Sanchez had no way to determine the falsity of these representations and material omissions, and he reasonably relied upon such misrepresentations to his detriment." There is no particular-ized allegation that a certain misrepresentation was relied upon by Mr. Sanchez, nor that he actually relied on any misrepresentation, so the Family has failed to state a fraud claim. *See* **Allgood**, 80 F.3d at 171. A breach of implied warranty claim requires an underlying "sale," *see* Tex. Bus. & Com. Code Ann. § 2.314 (Vernon 1994), and there is no sale involving the non-manufacturer defendants. *See* **Allgood**, 80 F.3d at 170. A DTPA claim requires an underlying consumer transaction; there must be a nexus between the consumer, the transaction, and the defendant's conduct. *See* **Amstadt v. U.S. Brass Corp.**, 919 S.W.2d 644, 650 (Tex. 1996). There is no consumer transaction involving the non-manufacturer defendants. Civil conspiracy requires liability for an underlying substantive tort, and there is no such substantive liability for the non-manufacturer defendants. *See, e.g.*, **Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.**, 435 S.W.2d 854, 856 (Tex. 1968).

### IV.

Texas state law definitively precludes this lawsuit. There is, therefore, no need to address the preemption question presented by this case. The judgment below is AFFIRMED.

ROBERT M. PARKER, Circuit Judge, dissenting:

The majority inexplicably ignores the controlling statement of law from the Supreme Court of Texas in *American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420 (Tex. 1997), which disposed of the precise issue presented by this case and, instead relies on this court's earlier wrong *Eire* guess in *Allgood v. R.J. Reynolds Tobacco Co.*, 80 F.3d 168 (5th Cir. 1996), and grants the Tobacco Companies a common knowledge defense to **all** of Sanchez's claims as a matter of law. My obligation to *stare decisis* compels this dissent.

Because jurisdiction over this action is based on diversity of citizenship, we are bound to apply the substantive law of the State of Texas and have been for sixty-one years. *See Rogers v. Corrosion Prods.*, 42 F.3d 292, 295 (5th Cir. 1995). If the state through its highest court has spoken clearly in interpreting its law, it is not within the authority of this Court to reinterpret that law. *See Ladue v. Chevron U.S.A., Inc.*, 920 F.2d 272, 274 (5th Cir.1991). Further, we disregard our own earlier interpretation of state law when there is an intervening decision on the issue by the state's highest court. *See Federal Deposit Ins. Corp. v. Abraham*, 137 F.3d 264, 269 (5th Cir. 1998).

The Texas statute provides that a manufacturer or seller shall not be liable in a products liability action if "the product is inherently unsafe and the product is known to be unsafe by the ordinary consumer who consumes the product with the ordinary

-10-

knowledge common to the community[.]" TEX. CIV. PRAC. & REM. CODE ANN. § 82.004(a)(1)(Vernon 1997). The Texas Supreme Court in *Grinnell* held that "the general ill-effects of smoking were commonly known when Grinnell started smoking in 1952. However, **we also hold** that American did not establish that the **addictive** quality of cigarettes was commonly known . . . in 1952." *Grinnell*, 951 S.W.2d at 428 (emphasis added)(citing *Austin v. Tennessee*, 179 U.S. 343 (1900)(observing that "a belief in [cigarettes'] deleterious effects, particularly upon young people, has become very general, and communications are constantly finding their way into the public press denouncing their use as fraught with great danger . . . ."); Kessler, et al., *The Legal and Scientific Basis for FDA's Assertion of Jurisdiction Over Cigarettes and Smokeless Tobacco*, 277 J.A.M.A. 405, 406 (1997)(pointing out that "before 1980 . . . no major public health organization had determined that nicotine was an addictive drug")). The Tobacco Companies are hard pressed to take the position that the addictive nature of cigarettes was common knowledge in the 1950's since they have steadfastly denied that cigarettes are addictive and, even today, only "acknowledge findings" about addictiveness. *See* Galligan, *A Primer on Cigarette Litigation Under the Restatement (Third) of Torts: Products Liability*, 27 Sw. U. L. Rev. 487, 496 & n.54 (1998).

The majority declines to apply *Grinnell* because "the *Grinnell* lawsuit was filed before September 1, 1993, . . . [and] was governed by common law, not by § 82.004(a)." The question before the *Grinnell* court was indeed governed by pre-statute Texas law, that is,

Restatement (Second) of Torts § 402A cmt. I and j (1965). *See Grinnell*, 951 S.W.2d at 427. However, *Grinnell* noted that § 82.004, applicable to cases (such as this one) filed after September 1, 1993, was a codification of § 402A, comments I and j. *See id.* at 427 n.2. It is therefore clear that the Texas Supreme Court's discussion in *Grinnell* of the common knowledge defense controls our interpretation of § 82.004.

The majority's assertion that the general health hazards of smoking were common knowledge when Sanchez began smoking in 1957 is correct under *Grinnell*. However, because the Sanchez Family asserted claims based on the addictive quality of tobacco, as well as the general health hazards of smoking, the common knowledge defense does not dispose of this entire case. The majority lumps addiction claims with general health claims even though the Texas Supreme Court has held squarely that it is not a general health claim subject to the common knowledge defense.[4] The majority opinion, in effect, makes a fact finding that the addictive nature of cigarettes is common

_____

[4]The Texas legislature's consideration and rejection of an amendment that would have preserved a products liability claim for an individual who began smoking as a minor does not justify the majority's decision to substitute it's judgment for the law of Texas expressed by *Grinnell*. First, the proposed amendment indicates only that the author of the amendment recognized the addictive properties of tobacco in 1992. This sheds no light on the question of whether tobacco's addictiveness was common knowledge in the 1950's. In fact, it may be read to indicate that the majority of the Texas legislature in the early 1990's did not yet understand that tobacco was addictive. Second, the Texas Supreme Court, speaking **after** the legislative debate over the parameters of § 82.004(a) that the majority finds instructive, specifically rejected the majority's conclusion that both the addictiveness and the general health hazards of tobacco were common knowledge in the 1950's.

-12-

knowledge.  The most amazing part of it is that it is a fact finding with which both the Texas Supreme Court and the Tobacco Companies disagree.

Whatever happened to Federalism?