Revised January 17, 2002

**UNITED STATES COURT OF APPEALS**
For the Fifth Circuit

_____

No. 00-40658
_____


RUTH HUGHES, Individually and as Representative
of the Estate of Sherman Hughes, Sr., Deceased,

Plaintiff-Appellant,


VERSUS


THE TOBACCO INSTITUTE, INC.; PHILIP MORRIS, INC.; BROWN
& WILLIAMSON TOBACCO CORPORATION; R.J. REYNOLDS TOBACCO CO.;
B.A.T. INDUSTRIES PLC; LORILLARD TOBACCO CO.; THE AMERICAN
TOBACCO COMPANY; LIGGETT GROUP, INC.; UNITED STATES TOBACCO
COMPANY; THE COUNCIL FOR TOBACCO RESEARCH USA, INC.,

Defendants-Appellees.

------------------------------------------------------------------


_____

CONSOLIDATED WITH
No. 00-40718
_____


CARLIS COLE; ET AL.,

Plaintiffs,


CARLIS COLE; CHARLES COLE; LOUIS ARDOIN; CHARLES BANKS;
RUTH DAVIS; DONALD FRENCH; LOIS FRENCH; LINDA GOODWIN;
DANIEL HUGHES; BARBARA ORR; DARRELL ORR, SR.; DALE SONNIER;
AGNES VONDY, Individually & as Representative of the Estate
of Luanne Davis, Deceased; KAFFIE WILLIAMS, Individually &

as Representative of the Estate of Jules Williams, Sr.,
Deceased; FRANK O'PRY; JOSEPH WRAY, the Son of Thomas H.
Wray, Deceased, & Paula Wray Ewing, Executrix of the Estate
of Thomas H. Wray, Deceased; PATRICIA GIBSON, Individually

& as Representative of the Estate of Danny Gibson,
Deceased & as Next Friend of Paul Gibson, Patrick Gibson,
Bryan Gibson, Gayla Gibson & Gabrielle Gibson, Minors,

Plaintiffs-Appellants,

STEVEN FAIRCLOTH,

Intervenor Plaintiff-Appellant,

VERSUS

THE TOBACCO INSTITUTE, INC.; PHILIP MORRIS, INCORPORATED;
BROWN & WILLIAMSON TOBACCO CORPORATION; R.J. REYNOLDS TOBACCO
COMPANY; B.A.T. INDUSTRIES PLC; LORILLARD TOBACCO COMPANY; THE
AMERICAN TOBACCO COMPANY; LIGGETT GROUP, INC.; UNITED STATES
TOBACCO COMPANY; THE COUNCIL FOR TOBACCO RESEARCH USA, INC.,

Defendants-Appellees.

---

Appeals from the United States District Court
for the Eastern District of Texas

---

December 28, 2001

Before GARWOOD, DeMOSS, and DENNIS, Circuit Judges.

DeMOSS, Circuit Judge:

Several Plaintiffs, seeking class status, sued numerous tobacco manufacturer and trade association Defendants, alleging negligence, strict liability, fraud, misrepresentation, breach of

2

warranty, antitrust violations, negligent and intentional entrustment, public nuisance, unjust enrichment, aggravated assault, Federal Racketeer Influenced and Corrupt Organization Act (RICO) violations, and Deceptive Trade Practices Act (DTPA) violations. The district court severed Plaintiff Hughes' claims into a separate suit so it could proceed to resolution on the merits.

The Defendants sought dismissal on the pleadings in the severed case *Hughes v. Tobacco Institute*, asserting that § 82.004 of the Texas Practices and Remedies Code barred all Hughes' claims. The Defendants' motion was based in large part on this Court's opinion in *Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486, 490 (5th Cir. 1999), where we held that § 82.004 barred various claims predicated on the harmful or addictive nature of cigarettes. In response, Hughes argued that the *Sanchez* majority erroneously rejected controlling Texas Supreme Court precedent and informative legislative history, and that *Sanchez*'s interpretation of § 82.004 violated the United States and Texas Constitutions.

On May 8, 2000, the district court granted the Defendants' motion to dismiss Hughes' claims. The court also *sua sponte* dismissed the claims in *Cole v. Tobacco Institute*, the suit from which *Hughes* had been severed, on the same grounds. The Plaintiffs from both suits appeal here. For the reasons expressed below, we AFFIRM the district court's judgment.

3

## I. STANDARD OF REVIEW

Any party may move for judgment on the pleadings after the pleadings are closed. FED. R. CIV. P. 12(c). We review rule 12(c) dismissals *de novo*. **St. Paul Mercury Ins. Co. v. Williamson**, 224 F.3d 425, 440 n.8 (5th Cir. 2000). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." **Id**. Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain. **Voest-Alpine Trading USA Corp. v. Bank of China**, 142 F.3d 887, 891 (5th Cir. 1998). In ruling, the district court is confined to the pleadings and must accept all allegations contained therein as true. **St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.**, 937 F.2d 274, 279 (5th Cir. 1991).

The district court, when presiding over a diversity case, must apply the law of the forum state. **Erie R.R. Co. v. Tompkins**, 304 U.S. 64, 78 (1938). And the court is "bound to apply the law as interpreted by the state's highest court." **Texas Dep't of Hous. & Cmty. Affairs v. Verex Assurance, Inc.**, 68 F.3d 922, 928 (5th Cir. 1995) (quoting **Ladue v. Chevron U.S.A., Inc.**, 920 F.2d 272, 274 (5th Cir. 1991)). "When there is no ruling by the state's highest court, it is the duty of the federal court to determine as best it can, what the highest court of the state would decide." **Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.**,

4

953 F.2d 985, 988 (5th Cir. 1992). This Court's interpretation of Texas law is binding on the district court, unless a subsequent state court decision or statutory amendment renders our prior decision clearly wrong. *Batts v. Tow-Motor Forklift* **Co.**, 66 F.3d 743, 747 (5th Cir. 1995).

## II.   TEX. CIV. PRAC. & REM. CODE § 82.004

In 1993, the Texas Legislature enacted § 82.004, which limits product liability actions against manufacturers and sellers of allegedly defective products. Specifically, it provides:

> (a)  In a products liability action, a manufacturer or seller shall not be liable if:
>   (1)  the product is inherently unsafe and the product is known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community; and
>   (2)  the product is a common consumer product intended for personal consumption, such as sugar, castor oil, alcohol, tobacco, and butter, as identified in Comment i to Section 402A of the Restatement (Second) of Torts.
> (b)  For purposes of this section, the term "products liability action" does not include an action based on manufacturing defect or breach of an express warranty.

TEX. CIV. PRAC. & REM. CODE § 82.004. Another section defines a "products liability action" as:

> any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.

5

TEX. CIV. PRAC. & REM. CODE § 82.001.

## A. JUDICIAL INTERPRETATIONS OF § 82.004

No Texas Court has had occasion to apply § 82.004 in a tobacco suit. However, in *Sanchez*, this Court concluded, as a matter of first impression, that § 82.004 bars claims premised on the harmful or addictive nature of tobacco, including those brought as claims for fraud, misrepresentation, breach of implied warranty, DTPA violations, and conspiracy. 187 F.3d at 491.

In *Harris v. Phillip Morris Inc.*, 232 F.3d 456, 457–58 (5th Cir. 2000), and then again in *Davis v. R.J. Reynolds Tobacco, Inc.*, 231 F.3d 928, 930 (5th Cir. 2000), this Court revisited this issue, holding that suits for assault were likewise precluded by § 82.004. In both cases, we reiterated that § 82.004 bars all state law claims, not expressly exempted by the statute, that are predicated on personal injury or death from a defective product "regardless of the theory or combination of theories under which the claim is brought." *Harris*, 232 F.3d at 459; *Davis*, 231 F.3d at 930.

## B. PLAINTIFFS' CLAIMS

The district court held that our *Sanchez* decision precluded "most of [P]laintiffs' claims as they arise from personal injury or death caused by a defective product." We agree. Under *Sanchez* and its progeny, § 82.004 bars the Plaintiffs' negligence, strict liability, fraud, misrepresentation, negligent and intentional

6

entrustment, public nuisance, unjust enrichment, assault, and DTPA claims because they are all predicated on a product-defect theory. *Sanchez*, 187 F.3d at 491.

The district court did correctly recognize that some of the Plaintiffs' claims are unaffected by § 82.004's limitation on liability. Specifically, the court found that the Plaintiffs' breach of warranty claim survived because it is expressly exempted by the statute, and that the Plaintiffs' RICO and antitrust claims survived because a state statute cannot preempt federal law. However, the court went on to hold that each of these remaining claims failed for reasons other than the preclusive effect of § 82.004. We agree.

## 1. Plaintiffs' RICO Claim

The Plaintiffs assert a RICO claim based on the predicate offenses of assault and injury to a child, elderly individual or disabled individual. TEX. PEN. CODE § 22.02 & 22.04. To prevail in a RICO suit, a plaintiff must demonstrate an injury to business or property. 18 U.S.C. § 1964(c); *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) ("[T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property."). The phrase "injury to business or property" excludes personal injuries. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). Because the only damages asserted by the

7

Plaintiffs are for personal injuries, the district court's judgment on the pleadings on this claim was proper.

**2.    Plaintiffs' Antitrust Claim**

The Plaintiffs next assert an antitrust claim, contending that the Defendants entered into an agreement to restrain free competition by coordinating tobacco research on the safety of tobacco and other products such as the "safer cigarette." They also allege that the Defendants entered into a "gentleman's agreement" to suppress independent research and to hide any negative results. As a result of this conspiracy, Plaintiffs claim that information on the dangers of smoking and addition was suppressed, that safer cigarettes and products were not developed, and that cigarette prices increased as a result.

Factors relevant to determining whether a plaintiff has established antitrust standing include:  (1) the causal connection between the alleged antitrust violation and harm to the plaintiff; (2) an improper motive; (3) the nature of the plaintiff's alleged injury and whether the injury was of a type that Congress sought to redress with the antitrust laws (antitrust injury), (4) the directness with which the alleged market restraint caused the asserted injury; (5) the speculative nature of the damages; and (6) the risk of duplicative recovery or complex apportionment of damages. *See **Sullivan v. Tagliabue***, 25 F.3d 43, 46 (1st Cir. 1994)

(summarizing antitrust standing factors established in *Associated Gen. Contractors v. California State Council of Carpenters*, 459 U.S. 519, 537-45 (1983)). The district court found that several of these factors weigh against finding antitrust standing for individual smokers:

> First is the risk of duplicative recovery and complexity in apportioning damages. Section 4 of the Clayton Act limits recovery to individuals who have been "injured in their business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15(a) . . . . [I]n *Illinois Brick Co. v. Illinois*, [the Court] limited antitrust standing to plaintiffs who purchased directly from the antitrust violators. 431 U.S. 720, 729-35 (1977). The Court held that determining the extent of damages as divided between direct and indirect consumers would involve evidentiary complexities and uncertainties which would prolong and complicate proceedings rendering them ineffective. 431 U.S. at 732. Another consideration was the risk of duplicative recovery. Allowing consumers who purchased goods from distributors who could bring their own suits would result in two sets of plaintiffs recovering from the defendant for the same acts. In the present case, this factor weighs heavily against standing.
>
> . . . .
>
> The second factor which weighs heavily against finding antitrust standing is whether the type of injury alleged was intended to be remedied by antitrust law; that is whether the plaintiffs have suffered an antitrust injury. . . . The Ninth Circuit has determined that this requires the injured party to be a participant in the same market as the alleged malefactors. Parties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury. Individual smokers do not buy cigarettes from manufacturers, but from retailers who in turn buy from distributors thus the plaintiffs are at least one step removed from market in which the manufacturer defendants participate. Since the plaintiffs have not shown they were direct purchasers,

9

> this factor weights heavily against finding antitrust standing.
>
> The court finds that these factors alone preclude a finding of antitrust standing  The plaintiffs' antitrust claims are therefore dismissed on the basis of the pleadings.

(Citations and footnote omitted.)  We are persuaded by the district court's reasoning.  The Plaintiffs' antitrust claims were properly dismissed on the pleadings.


## 3.  Plaintiffs' Breach of Warranty Claim

In support of their breach of warranty claim, the Plaintiffs assert that the Defendants made knowingly false statements as to the health dangers of smoking and the addictive qualities of nicotine through advertising and public statements.  The Plaintiffs claim these statements formed the "basis of the bargain" for themselves and others in both starting and continuing to smoke.  Specifically, Plaintiffs point to statements Defendants made from 1954 to 1994.

As the district court correctly noted, any statement made before May 5, 1993 is barred by limitations.[1]  Thus, the only

---

[1]  This suit was filed on May 5, 1997, and the applicable statute of limitations is four years.  TEX. BUS. & COM. CODE § 2.725(a)-(b).  The Plaintiffs have not alleged that the Defendants made any specific representation about *future* performance, which can, in certain circumstances, extend the time frame for bringing suit on an express warranty.  *See* ***id.***; ***Cornerstones Mun. Util. Dist. v. Mansanto Co.***, 889 S.W.2d 570, 577 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

relevant representation relied upon by the Plaintiffs is a 1994 statement by major cigarette manufacturer executives before the House Subcommittee on Health and the Environment of the Committee on Energy and Commerce, that nicotine is not addictive.[2] The Plaintiffs contend that, despite this statement in 1994, the Defendants have known cigarettes were addictive since the early 1960s.

An express warranty is "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." TEX. BUS. & COM. CODE 2.313(a)(1); *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997). Only sellers—not trade associations—may be liable for breach of express warranties. *Allgood v. R.J. Reynolds Tobacco Co.*, 80 F.3d 168, 170-71 (5th Cir. 1996). Accordingly, judgment on the pleadings in favor of the Defendant trade associations on Plaintiffs' express warranty claims was proper.

The Plaintiffs' breach of express warranty claims against the remaining Defendants necessarily fail as well. Defendants' statements before Congress were made forty-two years after the Plaintiffs became addicted to cigarettes. Thus, these statements cannot have formed the "basis of the bargain" for the Plaintiffs' initial purchase of cigarettes. *See generally Grinnell*, 951 S.W.2d

---

[2] The district court correctly concluded that most of the other "representations" cited by the Plaintiffs were insufficient to constitute express warranties.

11

at 436 (explaining that "basis of the bargain" is analogous to the common law "reliance" element). And, to the extent Plaintiffs' argument rests on the contention that they continued to smoke in reliance on the Defendants' 1994 statement, we agree with the district court that "any express warranty within the limitations period was negated by the common knowledge that smoking is addictive and dangerous to one's health." *Cf.* **Allgood**, 80 F.3d at 172 (holding manufacture had no duty to warn of the dangers of smoking because "the dangers of cigarette smoking have long been known to the community").

## III.  PLAINTIFFS' CONSTITUTIONAL CHALLENGES

Finally, the Plaintiffs contend that this Court's interpretation of § 82.004 is unconstitutional. First, they argue that our interpretation violates the open court's provision of the Texas Constitution. The open courts provision provides that "[a]ll courts shall be open, and every person for a injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. To establish an open court's violations, the plaintiff must establish that (1) he or she has a well-established, cognizable common law cause of action that is being abrogated or restricted, and (2) that restriction of the claim is unreasonable or arbitrary when balanced against the statute's purpose. **Diaz v. Westphal**, 941 S.W.2d 96, 100 (Tex.

12

1997). The district court concluded that the Plaintiffs failed to establish the first prong, i.e. that they had a well-established, cognizable common-law claim that § 82.004 abrogated or restricted. We agree. As recently as 1996, this Court labeled a product liability action premised on the addictive nature of cigarettes as a "novel and wholly untested theory." *Castano v. American Tobacco Co.*, 84 F.3d 734, 737 (5th Cir. 1996). And just last year another panel of this Court, whose decision we are bound to follow, concluded that an assault claim premised on personal injuries from smoking was not a "well-established" common-law claim.[3] *Harris*, 232 F.3d at 458. Accordingly, we conclude that the district court's rejection of the Plaintiffs' open courts challenge was proper.

Lastly, the Plaintiffs argue that § 82.004 violates the Due Process clauses of the United States and Texas Constitutions. Specifically, the Plaintiffs argue that *Sanchez*'s interpretation of § 82.004 is unreasonable and arbitrary because it, in effect, grants tobacco manufacturers immunity from suit in the state of Texas.

---

[3] We do not necessarily agree with the *Harris* Court's dicta that the Texas Products Liability Act does not violate the open courts provision simply because it does not preclude manufacturing defect and express warranty claims. *See Harris*, 232 F.3d at 458.

13

Since no fundamental right is implicated here, § 82.004 need only be rationally related to the stated legislative purpose. *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 525 (Tex. 1995). Thus, the Texas Legislature's enactment of § 82.004 is unconstitutional only if it is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996) (quoting *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926)). The Texas Legislature's stated purpose is passing § 82.004 was to abrogate frivolous lawsuits it perceived as wasting judicial time and money, and to adopt the Restatement (Second) of Torts § 402A. We agree with the district court that a rational relationship exists between § 82.004 and the Texas Legislature's objective. Accordingly, § 82.004 does not violate the Plaintiffs' Due Process rights. The district court did not err in rejecting the Plaintiffs' constitutional challenges.

## IV. PLAINTIFFS' MOTION TO CERTIFY QUESTIONS TO THE SUPREME COURT OF TEXAS

As an alternative to their urging this Court to reexamine *Sanchez*, the Plaintiffs have requested that we certify several questions to the Texas Supreme Court. Specifically, they assert that we should ask the court (1) whether this Court correctly interpreted Texas law in *Sanchez*, and (2) whether the *Sanchez*

14

interpretation of § 82.004 violated the Texas Constitution.

The Texas Constitution allows federal appellate courts to certify questions to the Texas Supreme Court if no Texas Supreme Court authority is on point. TEX. CONST. art. V, § 3-c; *see also* TEX. R. APP. P. 58.1. However, certification is not "a proper avenue to change our binding precedent." *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1247 (5th Cir. 1997). "Once a panel of this Court has settled on the state law to be applied in a diversity case, the precedent should be followed by other panels without regard to any alleged existing confusion in state law, absent a subsequent state court decision or statutory amendment which makes this Court's decision clearly wrong." *Lee v. Frozen Food Express, Inc.*, 592 F.2d 271, 272 (5th Cir. 1979).

## A.    THE *SANCHEZ* QUESTION

A panel of this Court interpreted § 82.004 in *Sanchez*, and two other panels followed that interpretation in *Harris* and *Davis*. Absent a "subsequent state court decision or statutory amendment which makes this Court's decision clearly wrong," this Court will deny this and any future motion to certify questions related to the correctness of our *Sanchez* decision. *Lee*, 592 F.2d at 272. We also take this opportunity to issue the caveat to future litigants that, absent a contrary Texas Supreme Court opinion or a legislative amendment to § 82.004, we shall henceforth consider our

15

"Erie guesses" in *Sanchez*, *Harris*, *Davis*, and this case to be settled law in this Circuit as to the applicability and interpretation of § 82.004 in regard to tobacco being an inherently unsafe product, and further appeals may be deemed frivolous by this Court.

## B.    THE CONSTITUTIONALITY QUESTION

We likewise decline to certify the question of the constitutionality of our interpretation of § 82.004 in *Sanchez*. "Absent genuinely unsettled matters of state law, we are reluctant to certify" because we "do not lightly abdicate our mandate to decide issues of state law when sitting in diversity." *Jefferson*, 106 F.3d at 1247-48.  The ability to certify questions is a valuable tool, but we are cautious to avoid its overuse "lest we wear out our welcome." *Transcontinental Gas Pipeline Corp. v. Transportation Ins. Co.*, 953 F.2d at 623 (5th Cir. 1992).  The tests for determining the constitutionality of a statute are developed enough in Texas for us to apply these tests with confidence.  Thus, certification is inappropriate.

## IV.   CONCLUSION

Having carefully reviewed the entire record of this case, and having fully considered the parties' respective briefing on the issues of these appeals, we find no error in the district court's judgment.  Accordingly, we AFFIRM.

16